Jack ISAAC and Ida Isaac, Plaintiffs,

v.

SHELL OIL COMPANY, a Delaware Corporation; Exxon Corporation, a New Jersey Corporation; Ashland Oil Company, a Kentucky Corporation; U. S. Chemical Company, a Michigan Corporation; General Motors Corporation, a Delaware Corporation; Durako Paint & Color Corporation, a Michigan Corporation, jointly and severally, Defendants.

Civ. A. No. 78–71329.

United States District Court, E. D. Michigan, S. D.

Aug. 23, 1979.

Gregory M. Janks, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Detroit, Mich., for plaintiffs.

Samuel A. Garzia, Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C., Detroit, Mich., for Shell Oil Co.

James N. Martin, Harvey, Kruse & Westen, Detroit, Mich., for Ashland Oil Co.

Ralph W. Barbier, Jr., St. Clair Shores, Mich., for U. S. Chemical Co.

Dennis M. Day, Plunkett, Cooney, Rutt, Watters, Stenczk & Pedersen, Detroit, Mich., for General Motors Corp.

John L. Wooster, Moore, Sills, Poling, Wooster & Sinn, P. C., Birmingham, Mich., for Durako Paint & Color Corp.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on defendant General Motors Corporation's motion for a protective order against what it contends is plaintiff's excessively burdensome and expensive request to produce documents pursuant to Federal Rule of Civil Procedure 34. Because the history of this litigation bears on the disposition of defendant's motion, a brief synopsis follows.

Plaintiff Jack Isaac originally filed suit in April, 1978, against Shell Oil Company and Exxon Corporation, alleging that he contracted cancer as a result of coming into contact with certain chemicals, manufactured by Shell and Exxon, in the performance of his employment as a reconditioner and repairer of electroplating machinery. At the inception of this litigation, General Motors was not a party defendant, but had sent certain electroplating machinery, purchased from plaintiff's employer Ionic International Company, back to Ionic for refurbishing. In an apparent attempt to determine what chemicals may have been on the machinery, plaintiff served upon General Motors subpoenas duces tecum, requesting information relating to all chemicals used in the electroplating process, and all purchasing, leasing, and repair documents and orders.[1] General Motors' motion to

---

1. The subpoena required:
   1. You are commanded to bring with you any and all records including, but not limited to: purchase orders, invoices, contracts, bills of sale, bills of lading, quotations, requisitions, offers and acceptances all with reference to the purchase or lease of electroplating equipment from Ionic International, Inc., of Warren, Mich. (a division of Enthone, Inc., of West Haven, Connecticut) for the years 1965–1975.

   [Plaintiff was employed as a repairer and reconditioner of electroplating machinery from 1973 through 1975.]
   2. You are further commanded to bring with you any and all documents including, but not limited, to, the type and nature delineated above, as well as repair orders, maintenance orders, requests and contracts relating to the refurbishing and/or repair of electroplating equipment by Ionic International, Inc., and relating to the cleaning and/or repair and/or

quash the subpoena which, it claimed, was an excessively burdensome and expensive [2] discovery request against a non-party to the suit, was denied, provided that plaintiff pay the costs of General Motors' location and production of the requested information. Plaintiff responded by filing an amended complaint, joining General Motors as a party defendant.

Plaintiff alleges that General Motors, in sending its machinery to Ionic for maintenance and repair, sent along on the machines the residue of certain chemicals or combination of chemicals used in the electroplating process, and that these chemicals contributed to his cancer. Following the filing of his amended complaint, plaintiff, pursuant to F.R.C.P. 34, requested General Motors to produce documents identical to those requested earlier by subpoena duces tecum. General Motors moved for a protective order, and this motion is now before this court for determination.

In support of its motion for a protective order, General Motors points to plaintiff's admitted ignorance of the identity of the exact chemicals used in the electroplating process, and whether the process leaves residue on the machinery which was harmful to plaintiff. General Motors contends that because of this ignorance, plaintiff has virtually no likelihood of proving his claim that General Motors utilized chemicals in its electroplating process which contributed to plaintiff's cancer. In addition, General Motors asserts that the excessive cost of producing the requested information (over $17,000 for one division only, and a total estimated cost of over $50,000), mandates the issuance of a protective order.

Plaintiff, on the other hand, asserts that the identity of the chemicals used is overwhelmingly relevant to proving his claims against General Motors. In response to General Motors' assertion that the discovery requested is prohibitively expensive, plaintiff maintains that defendant should not, solely because of its mammoth size and resultant clerical expenses, be allowed to avoid discovery which is necessary for a just adjudication of plaintiff's claim.

The salutary purposes and effects of the Federal Rules pertaining to discovery are well known. As stated by the Supreme Court in *Hickman v. Taylor,*

[C]ivil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1947).

In recent years, however, certain defects and abuses of the rules of discovery have been noted.[3] Among these are the use of

maintenance of the electroplating machine as referred to above.

3. You are further commanded to bring with you any and all documents including, but not limited to the type and nature delineated above, relating to any and all chemicals and/or substances, whatsoever, purchased by you for use in plating or electroplating processes performed by you. Additionally, you are required to delineate the manufacturer and/or suppliers of said chemicals and/or substances.

4. You are further commanded to delineate precisely the names of each and every chemical and/or substance used in plating or electroplating processes performed by you, and the precise order in which said chemicals and/or substances are used in your electroplating process. If, at any time during said electroplating process, two or more chemicals are used simultaneously in combination, you are, in every such case, to provide the individual names and percentages of said chemicals and/or substances of which such combination is composed.

This deposition will require oral testimony of the persons supplying the subpoenaed records.

2. Affidavits supporting General Motors' motion stated that the costs of producing the documents would, for one division only, exceed $17,000.

3. *Report of the Special Committee for the Study of Discovery Abuse,* ABA Section of Litigation, (1977); *Staff Paper on Scope of Discovery, Papers from Staff Presentation to the National Commission for the Review of Antitrust Laws and Procedures,* (1978); Erickson, *The Pound Conference Recommendations: A Blueprint for the Justice System in the Twenty-First Century,* 76 F.R.D. 277, 288–92 (1978). See also, Cohn, *Federal Discovery: A Survey of Local Rules and Practices in View of Proposed Changes to the Federal Rules,* 63 Minn.L.R. 253.

discovery to protract litigation, delay adjudication, and to escalate the cost as a weapon against a financially weak adversary. Of particular interest to this court is the view that document production may be the discovery tool most susceptible to abuse, because:

> each side has the ability to use a request for production as a means of imposing a burden on the other. The requesting party can force a discoveree to review an enormous mass of material and, in return, the discoveree will feel no pressure to restrict actual production to only materials that are truly relevant and material.[4]

These abuses and others have understandably led to proposals for reform.[5]

The motion before this court, however, must be granted or denied solely on the basis of the federal rules as in effect currently. Rule 34 provides that a party may serve on another party a request to produce and permit the inspection of documents in the possession of the party upon whom the request is served. The scope of discoverable documents is that of Rule 26(b): "any matter, not privileged, which is relevant to the subject matter involved in the pending action."

Protective orders are available pursuant to Rule 26(c) on motion for good cause shown. Where justice so requires, a protective order may issue to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. It has been said, however, that good cause is not established *solely* by showing that discovery may involve inconvenience and expense. *U. S. v. American Optical Co.,* 39 F.R.D. 580 (N.D.Cal.1966). It has also been said that a discoveree cannot avoid a proper discovery request by utilizing record keeping which conceals rather than discloses. *Alliance To End Repression v. Rockford,* 75 F.R.D. 441 (N.D.Ill.1977); *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73 (D.Mass.1976). On the

other hand, an overly broad request for discovery which constitutes no more than a fishing expedition will not be allowed. *Segan v. Dreyfus Corp.,* 513 F.2d 695 (2d Cir. 1975).

The Supreme Court recently considered an issue analogous to the issue presented by the motion before this court. In *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), the Court held that the defendant in a class action suit should not be responsible for any of the costs of determining the members of the purported class of plaintiffs. Although decided under F.R.C.P. 23(d), the Court's rationale is applicable to the case at bar. The Court reasoned that because the cost was substantial ($16,000) and because the plaintiffs could obtain the desired information by paying the same amount that defendants would have to pay, defendants did not have to pay the cost. According to the Court, it mattered not that the cost was modest in relation to defendants' ability to pay:

> In the context of a lawsuit in which defendants deny all liability, the imposition on them of a threshold expense of $16,000, to enable plaintiffs to identify their own class can hardly be viewed as an insubstantial burden. *Id.* at 362, 98 S.Ct. at 2395.

Furthermore, the Court noted that a mere allegation of wrongdoing is insufficient reason to require a defendant to "undertake financial burdens and risks to further a plaintiff's case." *Id.* at 363, 98 S.Ct. at 2396.

Briefly summarized, the facts underlying General Motors' motion for a protective order are as follows: Plaintiff alleges that the chemicals and/or processes employed by General Motors in connection with its electroplating machinery contributed in some way to his cancer. Yet, the plaintiff admits his ignorance of the chemicals and processes used by General Motors.

---

**4.** *Staff Paper on Scope of Discovery, supra,* at 36–36A.

**5.** *Committee on Rules of Practice and Procedure, Judicial Conference of the United States,* *Revised Draft of Proposed Amendments to the Federal Rules of Civil Procedure,* reprinted in 588 F.2d (Adv. Sheet No. 2, Feb. 1979); *ABA Report,* fn. 3, supra.

In other words, plaintiff has not demonstrated a reasonable basis for his allegations that General Motors is, in some way, liable to him. Plaintiff's notice to produce encompasses documents spanning a ten year period, although he was employed by Ionic for less than three full years. General Motors, if its motion for a protective order is denied, faces expenditures in excess of $17,000, and estimates its total cost of $50,000. In addition, General Motors denies all liability in this suit.

■ Applying the principles gleaned from the cases summarized above, it is clear that General Motors' motion in this case must be granted. Although the material sought by plaintiff may be matter properly discoverable under Rule 26(b), it is clear that plaintiff's desired method of obtaining this information threatens General Motors with considerable burden and expense. It is equally clear that, at this stage of the litigation, General Motors is being asked to bear a substantial threshold expense to obtain information which can only aid plaintiff's case. *Oppenheimer Fund, supra.* Where a plaintiff has shown not even reasonable grounds to support his allegations of liability, and where the discovery costs faced by the defendant are substantial, justice requires that a protective order be granted.

This ruling is not intended necessarily to deny discovery such as that relating to only those machines which plaintiff could specifically show were serviced by Ionic, or information relating to certain chemicals which plaintiff reasonably believed were used by General Motors and are hazardous to health. In such a situation, the court would make the same type of balancing analysis but within more limited parameters and might reach the same or a different conclusion. Plaintiff's instant request, however, is overly broad and in such a form is substantially burdensome on defendant.

In view of the foregoing, defendant General Motors' motion for a protective order is granted.

So ordered.