**MICRO MOTION, INCORPORATED,**
**Plaintiff–Appellant,**

v.

**KANE STEEL CO., INC.,**
**Cross/Appellant.**

**Nos. 89–1219, 89–1220.**

United States Court of Appeals,
Federal Circuit.

Jan. 24, 1990.

---

David J. Lee, Fish & Neave, New York City argued for plaintiff-appellant. With him on the brief were Jesse J. Jenner, Christa Hildebrand and John O. Tramontine.

Thomas J. Durling, Seidel, Gonda, Lavorgna & Monaco, P.C., Philadelphia, Pa., argued for cross/appellant.

Seymour Rothstein, Daniel A. Boehnen and Robert H. Resis, Allegretti & Witcoff, Ltd., Chicago, Ill., were on the brief for amicus curiae, Exac Corp.

Before MARKEY, Chief Judge, SKELTON, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

This appeal involves an order of a district court in an ancillary proceeding to obtain discovery from a nonparty in connection with a patent infringement suit being tried before a different district court. Two related appeals by similarly situated nonparties are also currently before us.[1] Discovery subpoenas relating to the same case were also served on at least two other nonparties. In each instance, the patent owner, Micro Motion, Inc., sought to obtain information from a nonparty competitor

1. *Micro Motion, Inc. v. Exac Corp. v. Smith Meter, Inc.*, 876 F.2d 1574 (Fed.Cir.1989), and *Micro Motion, Inc. v. Exac Corp. v. Neptune Measurement Co.*, 876 F.2d 1578 (Fed.Cir.1989) are dealt with in concurrently issued orders.

purportedly relevant and necessary to the issue of damages in the underlying patent infringement suit. In each instance, the nonparty moved to quash the subpoena, which in large part sought disclosure of the nonparty's confidential business information, such as sales volume of particular products and customer lists. In the proceeding involving the nonparty K–Flow Division of Kane Steel Company (K–Flow), dealt with in this opinion, the ancillary court ordered the disclosure of all information requested except for the names of K–Flow's customers.

Micro Motion appeals the denial of its request for the identities of K–Flow's customers (Appeal No. 89–1219); K–Flow cross-appeals the denial of its motion to quash with respect to the allowed requests (Appeal No. 89–1220). We conclude that Micro Motion has established no right under the Federal Rules of Civil Procedure to the discovery it requested and hold that K–Flow's motion to quash should have been granted in its entirety. Thus, in Appeal No. 89–1219, we affirm the district court's order to the extent challenged by Micro Motion, and in Appeal No. 89–1220, we reverse the rulings adverse to K–Flow.

## I

### Appellate Jurisdiction

■■■ This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1982) over the appeal by Micro Motion from the order of the New Jersey district court granting K–Flow's motion to quash in part where the discovery relates to a patent infringement suit under 28 U.S.C. § 1338(a) (1982). *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 228 USPQ 926 (Fed.Cir.1986). An order quashing a subpoena in an ancillary proceeding not only terminates that proceeding but also is unreviewable on appeal of the final judgment in the principal action. Thus, such order is deemed a final order and is immediately appealable as of right. *National Life Ins. Co. v. Hartford Accident & Indemnity Co.,* 615 F.2d 595, 597 (3d Cir.1980). In this case the cross-appeal of K–Flow need not be independently appealable to obtain review. The issues of the cross-appeal are closely intertwined factually and legally with the issues of the appeal. Under these circumstances, we may exercise pendent jurisdiction to review the merits of the cross-appeal, and we exercise our discretion in this case to do so. *See Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.,* 804 F.2d 129, 134, 231 USPQ 653, 657 (Fed.Cir.1986).

## II

### Background

In November 1984, Micro Motion, Inc., sued Exac Corp., Civil Action No. 84–20681 WAI, in the United States District Court for the Northern District of California, charging Exac with infringement of United States Patent Nos. 4,187,721, Re 31,450 and 4,491,025, in which suit it sought damages and injunctive relief. The subject matter of each patent relates to Coriolis mass flowmeters. Exac raised the defenses of unenforceability and noninfringement. The issues in the case were trifurcated for separate trials. First, the defense of unenforceability because of inequitable conduct was tried to the court and rejected. Thereafter, the issue of infringement was tried to the jury, which returned a verdict that Exac did not infringe. That verdict and the district court's denial of Micro Motion's motion for judgment NOV on infringement rendered a trial on damages unnecessary. However, the court granted a new trial on the issue of Exac's alleged infringement under the doctrine of equivalents, which brought the damage issue back into the case. *Micro Motion, Inc. v. Exac Corp.,* 686 F.Supp. 789, 5 USPQ2d 1957, 1963 (N.D.Cal.1987).[2] The parties agreed to additional discovery for the purpose of updating the evidence on damages, and the court set August 9, 1988, as the cutoff date for the additional discovery. On July 22, 1988, Micro Motion served a notice of deposition and accompanying subpoena on five companies, each of which allegedly competes with

---

**2.** In granting the new trial, the court found, *inter alia,* that the extremely complicated nature of the case apparently led to the jury's misunderstanding of the law.

Micro Motion and Exac in selling Coriolis mass flowmeters. The date for completion of discovery was subsequently extended by the district court judge who took over the case from the judge who presided at the first trial.

In each subpoena, Micro Motion sought to take the deposition of a person designated under Fed.R.Civ.P. 30(b)(6) and the production of the following documents and things from each of the nonparties:

(1) Documents evidencing the configuration and operation of each type or model of Coriolis mass flowmeter sold by [the company, including certain designated models].

(2) One sample of each type or model of Coriolis mass flowmeter sold by [the company].

(3) [Company] invoices for sales of Coriolis mass flowmeters or, if no invoices are kept, documents evidencing [the company's] sales volume and customers for Coriolis mass flowmeters.

(4) Documents relating to loss of sales by [the company] of its Coriolis mass flowmeters to Coriolis mass flowmeters of Micro Motion, Incorporated ("Micro Motion") or Exac Corporation ("Exac").

(5) Documents relating to deficiencies or malfunctioning of [the company's] Coriolis mass flowmeters, including but not limited to customer complaints, application data sheets for specific customers and call reports.

(6) Documents relating to comparisons of [the company's] Coriolis mass flowmeters with Micro Motion's Coriolis mass flowmeters and/or Exac's Coriolis mass flowmeters.

(7) Documents mentioning by name, number or other means of identification any of U.S. patents 4,187,721, Re 31,450 and 4,491,025.

Micro Motion obtained the subpoena for deposition and production served on K–Flow from the District Court for the District of New Jersey. After unsuccessful negotiations to limit the inquiry, K–Flow filed a motion to quash or in the alternative to modify the scope of the requested disclosure. K–Flow urged, *inter alia*, that the information Micro Motion sought was not relevant or necessary, that its secrecy and confidentiality were essential to K–Flow, and that its disclosure would cause K–Flow serious, if not irreparable, injury. Micro Motion responded that the requested material was relevant to the issue of "damages" in that, to recover lost profits in the *Exac* suit, Micro Motion might have to prove that K–Flow's flowmeters were infringements or were unacceptable noninfringing substitutes. Micro Motion concedes that most of the information is confidential which is one reason it asserts it needs discovery from K–Flow.

The district court denied K–Flow's motion to quash the subpoena, except with respect to disclosure of the identities of K–Flow's customers (paragraph (3) of subpoena list, *supra*). The court noted that the other courts addressing the same issues against other competitors in this case had generally upheld Micro Motion's discovery requests and that the Federal Circuit had counseled that an ancillary court should be "especially hesitant" to pass judgment on relevancy, citing *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212, 2 USPQ2d 1034, 1038 (Fed.Cir. 1987). With respect to "relevancy" the court held that Micro Motion need only show that the requested information sought "somehow relates to its pending California action", and it accepted Micro Motion's discourse on damage theories as establishing the relevancy of all the requests except as to the identities of K–Flow's customers. The court found "need" because the confidential information was not available elsewhere. *Sua sponte*, the court entered a protective order subjecting the disclosed information to the California court's protective order and, in addition, specifically limiting use of the information to the underlying litigation, prohibiting Micro Motion from contacting K–Flow's customers if the names were inadvertently disclosed, and providing for return of the materials to K–Flow. K–Flow urges that relevancy and need had not been established for any of the requested items and that, in any event, it will be substantially

harmed by the disclosure even under a protective order. Micro Motion claims entitlement to the discovery of K–Flow's customer lists, as well as all of the information, by reason of the pendency of the underlying patent infringement suit in which "damages" is an issue and urges that a protective order is sufficient to protect K–Flow's interests.

## III

### Patent Damages

#### A

■ If successful in an infringement suit, a patent owner may recover actual damages or at least a reasonable royalty. 35 U.S.C. § 284 (1982). Where the patentee produces or sells a product (or service) covered by the patent claims, the patentee may seek to recover damages based on a theory of lost profits because the amount is likely to be greater than reasonable royalties.

■ To recover damages on the theory of "lost profits", a patentee must show that, *but for* the infringement, it would have made the infringer's sales. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 864, 226 USPQ 402, 409–10 (Fed.Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). This requirement of causation implicates the patentee's manufacturing capacity and marketing capability, the desires of customers for the claimed invention, the relationship of the claimed invention to the product sold and other factors pertinent to the particular market or parties. Causation is most easily found where only two companies, the patentee and the infringer, are in the market. *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 653, 225 USPQ 985, 987 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

■ Where there is evidence of a third party competitor, the lost profits theory would appear to be nonviable inasmuch as the third party could have made the sale rather than the patentee. Under such circumstances, there appears to be no possible causation. However, such is not the law.

Patentees have successfully urged modifications to the basic damage theory so as to cover situations other than the simple two-supplier market. There is precedent for finding causation despite an alternative source of supply if that source is an infringer or puts out a noninfringing product that is an unacceptable alternative, or has insignificant sales. *See, e.g., Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 222 USPQ 654 (Fed. Cir.) (proof of no acceptable substitutes), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 222 USPQ 4 (Fed.Cir.1984) (no alternative competing source where only four or five machines sold); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983) (no acceptable alternatives because, *inter alia*, scale of operations of others was insignificant). Other litigants have been held entitled to lost profits damages calculated on a portion of an infringer's sales based on the patentee's market share. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577–78, 12 USPQ2d 1026, 1029 (Fed.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (U.S.1990). These various theories are all invoked here to justify discovery from K–Flow of its products, comparative test results, sales figures, customers' names, and the like, to enable Micro Motion to determine which version or versions of the various lost profits damage theories to pursue.

■ While the Federal Rules of Civil Procedure unquestionably allow broad discovery, a right to discovery is not unlimited. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). As a matter of procedure, to secure protection from discovery, a nonparty may invoke the inherent power of the court, *see* 5A J. Moore & J. Lucas, *Moore's Federal Practice*, § 45.05[3], at 37 (2d ed.1989), or Fed. R.Civ.P. 45(b), if appropriate, to quash a subpoena. Under Rule 45(d), a nonparty subpoenaed for testimony and production

of documents may move for a protective order under Fed.R.Civ.P. 26(c), including an order that discovery *not be had.* Confidential commercial information warrants special protection under Rule 26(c)(7). *Smith & Wesson v. United States,* 782 F.2d 1074, 1082 (1st Cir.1986). A nonparty also may merely object to production of documents and things. Fed.R.Civ.P. 45(d)(1). By merely objecting, such discovery is foreclosed except pursuant to an order of the court. *Id.* Also, Rule 26(d), which pertains to controlling the sequence and *timing* of discovery, may be invoked as a mechanism for accommodating the competing interests of those involved in the discovery process, for example, by delaying discovery on damages until liability is established. *Cf. Sinclair Refining Co. v. Jenkins Petroleum Process Co.,* 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449 (1933).

While the burdens may vary somewhat depending on which rule or procedure is invoked, the substantive considerations for denying a party discovery are generally the same and may be gleaned from Rule 26(b), (c) and (g). *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d at 1210–11, 2 USPQ2d at 1036–37; *American Standard, Inc. v. Pfizer Inc.,* 828 F.2d 734, 739–42, 3 USPQ2d 1817, 1820–23 (Fed.Cir.1987); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d at 1023–26, 228 USPQ at 931–33. Discovery may not be had regarding a matter which is not "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). *Even if relevant,* discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information. Fed.R.Civ.P. 26(b)(1); *American Standard, Inc. v. Pfizer Inc.,* 828 F.2d at 739–42, 3 USPQ2d at 1820–23. Rule 26(g) specifically requires that the party or his attorney seeking discovery must *certify* that he has made a "reasonable inquiry" that the request is warranted. This "reasonable inquiry" is also imposed by Rule 11. *See* Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules —1983 Amendment ("Discovery motions, however, fall within the ambit of Rule 11.- "); *see also Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1015 (2d Cir.1988) (noting that Rule 26(g) "imposes a more stringent certification requirement than Rule 11" because a discovery request usually pertains to more specific subject matter than that covered under Rule 11). Each of the requests here is improper under one or more of these protective grounds.

### B

In the instant situation, the patent suit has been tried once. Discovery on damages was completed and Micro Motion was apparently ready to proceed to trial on that issue had the verdict been favorable. In part because the district court concluded that the jury failed to comprehend complex issues (note 2, *supra* ), the patentee prevailed on its motion for a new trial and has been given a second chance to establish liability and, if successful on the merits, go on to prove its actual damages. In this second suit, the patentee tells us it expects Exac's position on lost profit damages to be that others offer noninfringing acceptable substitutes. Therefore, Micro Motion may have to prove that all models of Coriolis mass flowmeters of each competitor are infringements, presumably of each of its three patents in suit. With respect to any model which *the jury determines* is noninfringing, Micro Motion says it will ask the jury to find that the model is an unacceptable substitute. As proof of unacceptability of a K–Flow product or products, Micro Motion states that it plans to match K–Flow's customer list, particularly its unsuccessful prospects, with Exac's customers which, per Micro Motion, would show that the latter did not consider the competitive product a viable alternative. Alternatively, Micro Motion argues that if K–Flow customers "were not targeted" Exac customers or if there is a small overlap between K–Flow customers and Exac customers, particularly if each sells to different segments of the market, the jury could then infer that K–Flow products are unacceptable.

How many products will be involved is not calculable precisely from the record before us, but we note that Micro Motion requested information on about a dozen specifically identified models in its nonparty subpoenas. Thus, this "complex" suit against Exac could be turned into an absolute quagmire of proofs concerning a dozen or so other products that are related to the main suit only with respect to damages.

Micro Motion asserts that discovery is necessary at this time because the California district court has ordered that proof of damages must proceed along with, or immediately after, proof of liability before the same jury. Micro Motion's request to "update" its damage evidence did not inform the court that Micro Motion expected to have the jury resolve numerous additional mini-infringement trials on each competing product under each of its patents and, if these efforts were unsuccessful, to go on to make findings of their unacceptability. Had a true picture been painted for the California court, the court could and, very likely, would have required a preliminary showing of the viability and practicability of plaintiff's various damage theories, particularly before authorizing discovery against a wholly uninvolved nonparty.

■ A party to litigation has no absolute right to pursue any and every alternative theory of damages, no matter how complicated or tenuous. As indicated in *In re Sugar Indus. Antitrust Litig.*, a district court has discretion to deny a plaintiff's *proposed method of proof* of damages which imposes too great a burden on court proceedings:

Bifurcation of the issues of liability and damages seems to be the most appropriate way to proceed in this case. If the plaintiffs prevail in the liability phase of the case, then the court would direct the plaintiffs to submit proposals for the expeditious resolution of the damage issues. The court would than [sic] review such proposals to determine whether *the method of proving* damages will satisfy constitutional and procedural requirements and still *permit the efficient use of court time.*

73 F.R.D. 322, 355 (E.D.Pa.1976) (emphasis added). *Accord Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir. 1985) (discretion in methodology of computing lost profits damages); *see also TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902, 229 USPQ 525, 529 (Fed.Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 653–56, 225 USPQ 985, 987–89 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

■ The California court did not rule on whether any of Micro Motion's proposed theories were too tenuous or too burdensome on court proceedings to be tried. Unquestionably it is in the best position to determine whether Micro Motion's damage theories are viable.[3] While we could remand for the New Jersey court to consider remitting the parties to the California court at Micro Motion's expense,[4] it is unnecessary to do so. We conclude that, on this record, it was an abuse of discretion to order the discovery of the matters requested from K–Flow.[5]

In particular, Micro Motion asserted entitlement to discovery of information concerning each competitor's business simply because it may seek to prove lost profit damages. If this position were correct, a patentee could, in virtually every infringement suit, immediately obtain discovery from all possible competitors by merely filing a complaint asking for damages

---

3. Micro Motion has never had to show that it can possibly meet the other requirements for lost profits damages. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156, 197 USPQ 726, 729–30 (6th Cir.1978).

4. *Socialist Workers Party v. Attorney General of United States*, 73 F.R.D. 699 (D.Md.1977) (discovery transferred to court of main litigation, *inter alia*, where relevancy issues are complex).

5. *See Marroquin–Manriquez v. INS*, 699 F.2d 129, 134 (3d Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (the scope and conduct of discovery are within the sound discretion of the trial court).

against one. And, of course, the alleged infringer in such case would have the same right. While we do not suggest that discovery is being used in this case simply to harass a competitor, the possibility for such abuse of discovery is readily apparent.

In any event, Micro Motion's assertion of a claim for damages or even lost profit damages in itself does not provide a mantle of relevancy with respect to all of the information it sought from K–Flow, and the district court erred in essentially adopting that view. The court required no more of Micro Motion than a theoretical argument that the requested information "somehow relates to its pending California action." We cannot agree that the district court's test was appropriate here or that, on this record, relevancy of the discovery within the meaning of Rule 26(b) has been otherwise established. The doors of the discovery process may not be so easily opened.

We hasten to recognize that the New Jersey district court no doubt felt constrained to allow the discovery sought because it appeared that the California court had authorized reopening discovery to obtain information, *inter alia*, from this particular company. Obviously, the ramifications of Micro Motion's request were as obscure in the New Jersey district court as they were in California. We do point out, however, that the caution by this court against an ancillary court considering relevancy does not preclude such consideration where there are serious relevancy questions that have not been given meaningful consideration in the main litigation. Here, it was not in the interest of either of the principal litigants to limit discovery from their competitors and, thus, neither sought to have the California district court rule on the relevancy of the discovery sought from the nonparties, nor did either even suggest that the discovery be delayed until after liability was established. This is, thus, not a case where an ancillary court would be second-guessing a relevancy ruling of the court handling the main litigation.

## IV

### Discovery Regarding Patent Damages

#### A

■ As an initial matter, we reject Micro Motion's argument that the protective order, entered by the court here, obviates K–Flow's objections to discovery. The protective order is not a substitute for establishing relevance or need. Its purpose here is to prevent harm by limiting disclosure of *relevant* and *necessary* information. In appropriate cases, particularly where the company from whom discovery is sought has an affinity with a party to the main litigation, a protective order may be effective protection to a nonparty. *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d at 1019, 228 USPQ at 927–28. Here, however, information supplied by K–Flow is placed in risk of public disclosure by the very terms of the California protective order. To illustrate, the designation of material as "confidential" by K–Flow would not be controlling. The California court retains authority to decide what materials are properly deemed "confidential" and what part of the trial shall be *in camera*. It would be divorced from reality to believe that either party here would serve as the champion of its competitor K–Flow either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial. K–Flow would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing. *See Union Carbide Corp. v. Filtrol Corp.*, 278 F.Supp. 553 (C.D.Cal. 1967). Further, the resolution of the damages issue will necessarily disclose substantial information to the litigants. The point, however, is that a protective order which limits to whom information may be disclosed does not eliminate the requirements of relevance and need for information.

#### B

The initial inquiry on the discovery sought by Micro Motion is whether its requests are "relevant to the subject matter involved in the pending action." Fed.R.

Civ.P. 26(b)(1).[6] While the requirement that discovery be "relevant to the subject matter involved" is to be broadly construed, the divergent situations to which it must apply makes it impossible to provide a rigid definition of this phrase. *In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 460 (S.D.N.Y.1973); 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2008, at 45 (1970). Clearly discovery is allowed to flesh out a pattern of facts already known to a party relating to an issue necessarily in the case. *See, e.g., In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. at 458–62. At the other extreme, requested information is not relevant to "subject matter involved" in the pending action if the inquiry is based on the party's mere suspicion or speculation.[7] *See Mahoney v. United States*, 233 Ct.Cl. 713, 717–19 (1980); *Missouri Pacific R.R. v. United States*, 338 F.2d 668, 671–72 (Ct. Cl.1964). The area in between raises the difficult discovery questions where discretionary decisions must be made.

A case illustrating this point is *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 3 USPQ2d 1817 (Fed.Cir.1987). In *American Standard*, the patentee sought discovery of the sales figures of a nonparty alleged infringer to buttress its patent validity argument with evidence of the invention's commercial success. In affirming the district court's denial of the discovery sought, this court interpreted the "relevancy" requirement of Rule 26(b)(1) and concluded that the district court did not abuse its discretion in holding that the sales information of the nonparty was not *relevant.*[8] As this court stated there, the district court, on the record before it, could have concluded that the nonparty sales were not due to the merits of the invention inasmuch as many factors unrelated to the merits of the invention influenced from whom customers buy and, thus, the nonparty sales were not "relevant." *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d at 742, 3 USPQ2d at 1822. That holding is in line with the interpretation of Rule 26(b) that discovery may be denied where, in the court's judgment, the inquiry lies in a speculative area.

▮ In the instant case, Micro Motion must put forth a number of divergent damage theories on which to base its relevancy arguments inasmuch as all of the information requested from K–Flow does not relate to each of its damage theories. For example, information and documents with respect to complaints of customers and K–Flow's sales figures would be relevant to its theory that K–Flow's products are unacceptable noninfringing substitutes, but would not be relevant to its theory that K–Flow is an infringer. On the other hand, documents relating to Micro Motion's patents are not relevant to its unacceptable substitute theory. Thus, the question is whether Micro Motion satisfactorily established that *each theory* was actually "subject matter involved in the pending action."[9] The district court did not make

6. Rule 26(b)(1) provides in pertinent part:
Parties may obtain discovery regarding any matter, not privileged, which is *relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party....
Fed.R.Civ.P. 26(b)(1) (emphasis added).

7. Rule 26(b)(1) contains the provision: "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." That provision does not justify wholly speculative discovery. Rather it defines the scope of an inquiry, freeing discovery from the rules of evidence on admissibility. This subsidiary provision does not override the basic requirement of Rule 26(b)(1) that the discovery must be directed to "subject matter involved in the pending action."

8. A determination of relevance implicates substantive patent law. Therefore, we look to Federal Circuit law rather than regional circuit law in discussing relevance. *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1211–12, 2 USPQ2d 1034, 1038 (Fed.Cir.1987).

9. Whichever theory Micro Motion advances, we note that Micro Motion was prepared to try the issue of damages in the first trial without this discovery and, indeed, offered to forego additional discovery if it could secure an early second trial date. Were there any doubt that this discovery is not related to an issue *necessarily* or *inherently* involved in the pending suit, Micro Motion's own position would dispel it.

this type of inquiry but merely accepted Micro Motion's position that all requests were "relevant" to the issue of "lost profits damages." We must reject the view that relevancy can be established by merely giving an all encompassing name to distinctly separate inquiries. The issue to which each request relates must be "involved."

We conclude that the discovery requests of Micro Motion, as in *American Standard*, should have been denied as not relevant. There appears to be little case law on what is required to show that a particular inquiry is relevant to the subject matter of damages involved in the pending case. By analogy, however, were suit brought against K–Flow on a mere suspicion of infringement, discovery would not be allowed based on an allegation alone. "A bare allegation of wrongdoing ... is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 363, 98 S.Ct. 2380, 2395, 57 L.Ed.2d 253 (1978). The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim. *See, e.g., Netto v. AMTRAK*, 863 F.2d 1210, 1216 (5th Cir.1989); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir.1987); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978); *Hinton v. Entex, Inc.*, 93 F.R.D. 336, 337–38 (E.D. Tex.1981); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428 (E.D.Mich.1979). That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request (*see* note 8, *supra*).

It is reasonable to provide a nonparty from whom discovery is sought, at a minimum, with the same protection from discovery of information regarding infringement that it would have received had it been *sued* for infringement. Rule 26(g) requires a party to make a "reasonable inquiry" before seeking discovery, and parallels the thrust of Rule 11 with respect to making allegations in a complaint. In this case, not only has Micro Motion put forth not a shred of evidence on the infringing nature of the K–Flow products based on its reasonable inquiry, but also it has studiously refrained from charging K–Flow with infringement. We conclude that K–Flow's infringement is not, on this record, shown to be subject matter involved in the California suit. Indeed, Micro Motion virtually admits this by asking for *models* of K–Flow products so that it can determine whether they infringe. At best Micro Motion can have only a suspicion of infringement by K–Flow. The record shows only that K–Flow sells Coriolis mass flowmeters, goods which can be made without infringing Micro Motion's patents. An unfounded suspicion regarding K–Flow's infringement does not support discovery into that subject matter. *See In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 8 (2d Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Mahoney v. United States*, 233 Ct.Cl. 713, 717–19 (1980).

Similarly, Micro Motion has requested test reports and complaints by customers on each K–Flow model. This information is assertedly relevant to the issue of whether such products are unacceptable noninfringing substitutes. However, if the products are infringements, as Micro Motion also suspects, the requested information is wholly irrelevant. In any event, Micro Motion has supplied no evidence or affidavit which indicates that Micro Motion has made a reasonable inquiry into the nature of K–Flow products. Its argument that it needs the information rests, in fact, on its studied ignorance, an ignorance at least partially curable without discovery inasmuch as K–Flow products have been on the market since 1986.

While the expression "fishing expedition" has been generally denigrated as a reason for objecting to discovery, in some situations, such as the one at hand, it remains apt. *Hancock Indus. v. Schaeffer*, 619 F.Supp. 322, 331 (E.D.Pa.1985); *see also, Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir.1988); *Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1032 (5th Cir. 1983). Micro Motion here is unmoored and trolling.

In sum, Micro Motion's theory is legally erroneous that it is entitled under Rule 26 to obtain the discovery it seeks here simply because its patent infringement complaint against another seeks damages. A litigant may not engage in merely speculative inquiries in the guise of relevant discovery.

## V

### Deposition Subpoenas

The quashing of a subpoena *ad testificatum* is rarely granted. 5A J. Moore & J. Lucas, *Moore's Federal Practice*, § 45.05[3], at 37 (2d ed. 1989). Until the subpoenaed person is asked specific questions during the deposition, the deponent has, in virtually all cases, no basis to invoke the protective principles of Rule 26(c) in advance of his appearance, except as to the convenience of the time or place for the deposition. Thus, the general rule is that a properly served person must appear in accordance with a deposition notice or subpoena. *Id.* However, with the amendment of the rules to allow the subpoena of an unnamed deponent who must be able to testify as to particular matters concerning his company, as now provided in Rule 30(b)(6), the substantive matters into which inquiry will be made at the deposition may be revealed in advance. The deposition subpoena served on K–Flow in this case was one which specified that the deposition would be directed to the same matters as the documents and things which we have been discussing. Thus, in this case, the deposition subpoena is equally objectionable for the reasons previously given.

## VI

### Conclusion

For the foregoing reasons, denial of K–Flow's motion to quash the subject subpoena for discovery in its entirety constituted an abuse of discretion.

In appeal No. 89–1219, we *affirm.*

In appeal No. 89–1220, we *reverse.*

## VII

### Costs

Micro Motion shall pay all costs in Appeal No. 89–1219 and Appeal No. 89–1220.

AFFIRMED–IN–PART AND REVERSED–IN–PART.