**CAPITAL PROPERTIES, INC. and Metropark, Ltd, Plaintiffs,**

**v.**

**THE UNITED STATES, Defendant.**

**No. 99–954C.**

United States Court of Federal Claims.

June 21, 2001.

William F. Krebs, Washington, DC, attorney for plaintiff. Edward D. Greenberg and David K. Monroe, of counsel. Gerald J. Petros and Christopher R. Bush, Providence, RI, of counsel.

Allison A. Page, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

Jessica C. Abrahams, Washington, DC, attorney for non-party National Passenger Railroad Corporation ("Amtrak"). Stephen R. Smith, of counsel.

Erika Leigh Kruse, Providence, RI, attorney for The State of Rhode Island.

## ORDER

MEROW, Senior Judge.

This matter is before the court on non-party National Passenger Railroad Corporation's ("Amtrak") motion for a protective order and non-party State of Rhode Island's ("the State") motion for a protective order. Both motions seek to limit discovery by plaintiffs. Plaintiffs Capital Properties, Inc. and Metropark, Ltd. (collectively "CPI") have objected to both motions and moved to compel discovery.[1] Both Amtrak and the State argue that plaintiffs' discovery requests seek irrelevant information and are overly burdensome. Plaintiffs respond that they seek relevant information and that Amtrak and the State exaggerate the burden imposed by the discovery requests. Plaintiffs and the State have each filed motions for sanctions against the other. For the reasons stated below, Amtrak's motion for a protective order is granted in part and denied in part; the State's motion for a protective order is granted in part and denied in part; plaintiffs' motions to compel are granted in part and denied in part; the State's motion for sanctions is denied; and plaintiffs' motion for sanctions is denied.

## BACKGROUND

### A. The Underlying Dispute

CPI filed suit against defendant Federal Railroad Administration ("FRA") alleging breach of contract. CPI and FRA are parties to the Parking Facility Maintenance and Operation Agreement ("Parking Agreement"), a contract concerning a parking garage adjacent to the railroad station in Providence, Rhode Island. The garage was constructed pursuant to the Providence Rail Relocation Project Cooperative Agreement ("Cooperative Agreement").[2] Under the Cooperative Agreement, CPI provided the land for the garage and the railroad station, while CPI and FRA each contributed 50% of the cost of building the garage. The Parking Agreement is attached to the Cooperative Agreement as Exhibit VI. However, CPI and FRA are the only parties to the Parking Agreement.

This dispute concerns the rates that CPI charges to customers to use the parking garage. CPI and FRA initially agreed upon a two-tiered public parking rate schedule, with one rate for Amtrak customers and one for all other public users. Under the Parking Agreement, FRA has the right of prior approval of any changes in public parking rates. The Parking Agreement further provides that FRA "shall not unreasonably withhold its approval of [a request to change the parking rates] if the interests of intercity rail passengers are not adversely affected." Parking Agreement § 6.

In or about 1988, CPI began to sell "commuter books" of daily parking vouchers to holders of Massachusetts Bay Transit Authority ("MBTA") monthly passes.[3] Customers using these vouchers received a discount from the ordinary daily parking rate. In September, 1999, CPI announced its intention to discontinue the commuter book program, thereby increasing the rate charged to MBTA passengers.

The State, as a party to the Cooperative Agreement, sued CPI in the United States District Court for the District of Rhode Island to enjoin the rate increase. The State argued that under Section 6 of the Parking Agreement, CPI could not discontinue the commuter book program without prior FRA approval. The district court preliminarily enjoined CPI from discontinuing the program on October 4, 1999. CPI then request-

---

1. In its objection to Amtrak's motion for a protective order, CPI did not move to compel further discovery. However, it is apparent that CPI is seeking further discovery and its objection will be treated as a motion to compel. CPI's objection to the State's motion did contain a motion to compel.

2. The Cooperative Agreement, dated January 27, 1982, is between FRA, the State, the City of Providence, the Providence Redevelopment Agency, the Providence and Worcester Realty Company ("P & W"), and Amtrak. CPI is the successor-by merger to P & W.

3. The MBTA also operates trains that service the Providence railroad station.

ed FRA approval to terminate the commuter book program.

In its request, CPI contended that FRA should approve the rate increase because MBTA passengers are commuter passengers so that the increase would not adversely affect the interests of intercity rail passengers within the meaning of Section 6. In support, CPI cited the statutory definitions of "commuter service" and "intercity rail passenger service" in effect at the time the Cooperative and Parking Agreements were signed:

"Commuter service" means short-haul rail passenger service operated in metropolitan and suburban areas, whether within or across the geographical boundaries of a State, usually characterized by reduced fare, multiple ride, and commutation tickets and by morning and evening peak periods.

"Intercity rail passenger service" means all rail passenger service other than commuter service.

45 U.S.C. § 502 (9, 11) (1981), *repealed by* P.L. 103–272 § 7(b), 108 Stat. 1379 (1984) *and recodified* at 49 U.S.C. 24102(5–6) (1994). CPI argued that FRA should give its approval because the proposed rate increase for MBTA passengers would affect only commuters and therefore, by definition, could not adversely affect intercity rail passengers.

On October 29, 1999, FRA denied CPI's request to increase the parking rates. FRA claimed that MBTA passengers and Amtrak passengers are both intercity rail passengers because they both travel between cities, from center-city Providence to center-city Boston. CPI subsequently filed this action alleging breach of contract and breach of the implied covenant of good faith and fair dealing based on FRA's refusal to approve the request. One of the central issues in the case is the meaning of the term "intercity rail passengers," as used in Section 6 of the Parking Agreement.

### B. The Subpoena on Amtrak

On May 30, 2000, CPI issued a subpoena and Notice of Deposition pursuant to RCFC 30(b)(6) to Amtrak, which is not a party to this lawsuit. This notice contained a list of nine topics about which CPI intended to conduct oral examination. CPI subsequently issued an Amended Notice of Deposition containing 24 more specific topics of inquiry. Amtrak now seeks a protective order prohibiting inquiry into seven of these topics:

13. Communications, meetings, or discussions regarding the designation or contemplated designation of Amtrak as FRA's designee under Section 4 of the Parking Agreement.

14. The term "intercity rail passengers."

15. The term "commuter rail passengers."

16. The classification of MBTA passengers as "intercity rail passengers."

17. Contracts or agreements to which Amtrak is a party and in which the term "intercity rail passengers" is used, and the meanings of this term in those agreements.

19. Each instance in which Amtrak has taken the position or indicated that the term "intercity rail passengers" does not include "commuter rail passengers."

20. Each instance in which Amtrak has taken some other position regrading the meaning of the term "intercity rail passengers."

Amtrak contends that a protective order is necessary because the topics of inquiry are irrelevant to the legal issues in this case and because one of the topics seeks to divulge communications that are privileged.

### C. The Subpoenas on the State

On August 16, 2000 CPI served two subpoenas on the State, also not a party to this lawsuit. The first identified 14 areas of inquiry about which the State was to designate a witness to testify on its behalf. The second asked the State to produce 13 categories of documents.

The State thereafter designated Veronica Harris of the Rhode Island Department of Transportation ("RIDOT") as its deponent under RCFC 30(b)(6) and also to testify at the Keeper of Records deposition. On September 19, Ms. Harris appeared for both

depositions and produced documents from RIDOT's files.

The parties dispute whether the testimony given by Ms. Harris and the documents produced by the State adequately responded to CPI's discovery requests. CPI contends that the State failed to produce documents relevant to this case located in departments other than RIDOT. CPI also argues that Ms. Harris' testimony was inadequate because she testified only to her personal knowledge and not to the knowledge of the State. The State maintains that it has provided all responsive documents and that Ms. Harris is the person with the most relevant knowledge. The State further contends that CPI is using the discovery process in this case primarily to harass and explore a potential cause of action against the State. Both CPI and the State seek sanctions against the other.

## DISCUSSION

### A. Standard of Review

Under the broad rules of discovery, once an action has been commenced, "any party may take the testimony of any person, including a party, by deposition upon oral examination." RCFC 30(a). Unless otherwise limited by the Court, discovery is permitted upon "any matter, not privileged, which is relevant to the subject matter involved in the pending action." RCFC 26(b)(1). However, the rules governing discovery are not without limitations. *See Hickman v. Taylor,* 329 U.S. 495, 507–08, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed.Cir.1990).

■ The Court has discretion to limit or preclude pre-trial discovery if it is determined that "justice requires...[the] protect[ion of] a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." RCFC 26(c). Pursuant to this rule, the party seeking to shield itself from discovery bears the burden of demonstrating that "good cause" exists for a protective order. "Good cause" requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden. *See Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d. Cir.1995) (defining "good cause" for purposes of FRCP 26(c)); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352–53 (D.N.J.1990) (suggesting factors for determining "good cause"). When discovery is sought from a non-party to the litigation, the court may weigh that factor against the party seeking discovery. *See Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993).

### B. Merits

#### 1. Amtrak's Motion

■ Amtrak contends that a protective order preventing inquiry into topics 14–17, 19, and 20 is necessary for three principal reasons. First, Amtrak argues that, as a non-party to this litigation and to the Parking Agreement, its opinion of the meaning of terms in the Parking Agreement is irrelevant and therefore not discoverable. Second, Amtrak claims that even if its opinion is relevant, CPI has not demonstrated the special circumstances required to elicit a non-party's opinion of the meaning of contractual terms. Finally, Amtrak asserts that CPI has not met its burden to show the exceptional circumstances to depose Amtrak as essentially an unretained expert witness.

CPI contends that it is not seeking any opinion testimony from Amtrak. Rather, CPI claims only to seek factual testimony about the parties' original contractual intent and the trade usage of the term "intercity rail passengers" in the rail passenger industry today.

In its briefs submitted to the Court and at oral argument, counsel for Amtrak indicated that Amtrak does not object to providing factual testimony. It appears that CPI and FRA disagree as to the meaning of the term "intercity rail passengers" as used in the Parking Agreement. The Parking Agreement is attached to the Cooperative Agreement as Exhibit VI. Therefore, the meaning of the terms "intercity rail passengers" and

"commuter rail passengers" (topics 14 and 15) in the Cooperative Agreement, to which Amtrak is a party, may be relevant to the instant litigation. *See Alaska American Lumber Co., Inc. v. United States,* 25 Cl.Ct. 518, 527 (1992) (if one contract refers to or incorporates another, both contracts should be construed together to determine the meaning of the terms and intent of the parties). CPI should therefore be entitled to elicit testimony from Amtrak about the meaning of these terms as used in the Cooperative Agreement.

At oral argument, counsel for Amtrak stated that Amtrak has already provided this information through the deposition of Ted Jenkins. However, counsel for CPI represented that Mr. Jenkins was not produced as a RCFC 30(b)(6) witness and that he merely testified to his personal knowledge. Counsel for Amtrak did not dispute this representation. Under RCFC 30(b)(6), Amtrak must designate a person(s) to "testify on its behalf" regarding the meaning of the terms in topics 14 and 15, limited to their meaning in the Cooperative Agreement.

Similarly, whether the parties that entered into the Cooperative Agreement did or did not consider MBTA passengers to be "intercity rail passengers" (topic 16) may be relevant to this dispute. Amtrak must provide whatever information it has, if any, limited to the classification of MBTA passengers as "intercity rail passengers" relative to the Cooperative and Parking Agreements and the administration thereof.

In topics 17, 19, and 20, CPI seeks information about the use of the terms "intercity rail passengers" and "commuter rail passengers" in other contracts or agreements. The meaning of these terms in other contracts to which Amtrak is a party is not relevant to this dispute. Although testimony regarding the usage of these terms in the rail passenger industry may at some point be relevant, CPI has failed to demonstrate that it cannot obtain this testimony, which is essentially an expert opinion, from other sources. *See Hartford Fire Ins. Co. v. Pure Air,* 154 F.R.D. 202, 208 (N.D.Ind.1993). Therefore, Amtrak should not be required to provide this testimony. Similarly, whether

Amtrak has ever "taken a position" about the meaning of these terms is not relevant to this litigation. Discovery concerning topics 17, 19 and 20 is prohibited.

In topic 13, CPI seeks information regarding the designation of Amtrak by FRA under Section 4 of the Parking Agreement. Amtrak contends that it has provided all non-privileged information regarding this topic, including all communications between FRA and Amtrak. CPI may question Amtrak about any of these facts that are relevant to this litigation. Amtrak asserts the attorney client privilege only for a conversation between Dennis Moore, Senior Associate General Counsel of Litigation, and Sally Ballet, counsel to the President of Amtrak. According to Amtrak, this conversation concerned the impact of the proposed designation on ongoing and future litigation. Other than this conversation, CPI has not identified any documents or discussions that it seeks that Amtrak has withheld. It is considered that the conversation between Moore and Ballet constituted legal advice regarding potential litigation and is therefore privileged. *See Energy Capital Corp. v. United States,* 45 Fed.Cl. 481, 485 (2000).

### 2. The State's Motion

The State contends that CPI is using the discovery process in this case to compel the State to provide information sufficient to allow CPI to file suit against the State in another forum. The State argues that it has already complied with its obligations under the rules governing discovery and that any further discovery would be irrelevant and unduly burdensome. The State also contends that communications between it, Amtrak and the FRA are protected by the joint defense privilege. The State asks for a protective order prohibiting further discovery and for sanctions against CPI.

CPI responds that it seeks information relevant to the issues in this case. CPI contends that the State failed to satisfy its obligations under RCFC 30(b)(6) because the witness provided by the State was unable to testify about several of the areas of inquiry and because the State failed to produce any

documents maintained in other departments besides RIDOT. CPI asks this Court to order the State to: (1) produce a witness(es) able to provide full and complete answers to questions on the topics identified in the RCFC 30(b)(6) subpoena; (2) produce all documents responsive to the subpoena duces tecum; and (3) testify about all communications with FRA or Amtrak regarding CPI's request to terminate the commuter book program. CPI has also requested sanctions.

■ CPI contends that Ms. Harris, who testified at the RCFC 30(b)(6) deposition, did not have sufficient knowledge to answer questions regarding a number of the identified topics. Specifically, CPI claims that Ms. Harris was unable to answer some questions relating to the facts underlying the State's objection to CPI's request to discontinue the commuter book program. The State argues that whether or not it investigated these facts is irrelevant. However, because one potential issue in this case is whether FRA was reasonable in its denial of CPI's request, and because FRA appears to have relied upon the State's input in making its decision, it may be relevant whether there is any truth to the factual assertions in the State's objection.

The State does not dispute that there may be other people better able to testify about the objection than Ms. Harris. Under RCFC 30(b)(6), the State must designate one or more persons to "testify as to matters known or reasonably available" to the State. The objection was dated October 20, 1999, and it is reasonable to expect the State to know what investigation, if any, was done to determine the truth of the facts represented in the objection. The objection was signed by Ms. Harris and Mr. Joseph Larisa, counsel of record in this case. The State has already provided Ms. Harris, who testified to her personal knowledge regarding the objection. If the State does not wish for Mr. Larisa to testify, it is free to prepare another witness to testify about the objection on behalf of the State. *See United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996) (citing *Buycks–Roberson v. Citibank Federal Sav. Bank,* 162 F.R.D. 338, 343 (N.D.Ill.

1995)); *S.E.C. v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y.1992).

■ CPI also seeks relevant State documents maintained outside RIDOT. At her deposition, Ms. Harris testified that it was her understanding that RIDOT was the only department that contained documents responsive to CPI's subpoena duces tecum. However, Ms. Harris also stated that she made no inquiry or attempt to gather records from any other departments. It is not an unreasonable burden for the State to search for responsive documents in other departments, and to provide them to CPI if any exist.

■ In its brief submitted to this Court, the State argues that the joint defense privilege protects it from disclosing "any documents and/or communications among it, FRA, and Amtrak." Reply at 13. The State misconstrues the scope of the joint defense privilege. The joint defense privilege is an extension of the attorney client privilege that applies in certain limited situations. *See B.E. Meyers & Co., Inc. v. United States,* 41 Fed.Cl. 729, 732 (1998) ( citing *United States v. Bay State Ambulance & Hospital Rental Serv., Inc.,* 874 F.2d 20, 28 (1st Cir.1989)). "If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client *that otherwise qualifies as privileged* ... that relates to the matter is privileged as against third persons." *Meyers,* 41 Fed.Cl. at 732 (quoting Restatement (Third) of the Law Governing Lawyers § 126(1)) (emphasis added); *see also Allendale Mut. Ins. Co. v. Bull Data Sys.,* 152 F.R.D. 132, 140 (N.D.Ill. 1993) (joint defense privilege is not an independent shield).

■ Therefore, the joint defense privilege will not protect against disclosure of any non-privileged communications between the State, FRA and Amtrak that are relevant to this case. Neither CPI nor the State identified with specificity which communications or documents were withheld based upon the assertion of the joint defense privilege. It is therefore premature to determine whether

there are any communications that are protected by this privilege.

CPI has not offered any justification for further discovery beyond that which is discussed above. Therefore, further discovery is limited to inquiry into the facts underlying the State's objection to CPI's request, production of relevant documents maintained by the State outside of RIDOT, if any, and inquiry into communications between the State, FRA and Amtrak regarding the request.[4]

■ Under RCFC 37, the Court may impose sanctions for failure to comply with a subpoena or for abuse of the discovery process. Both the State and CPI have moved for sanctions. It is considered that sanctions are not warranted here, where both parties have acted in good faith and neither party has failed to obey a court order. *See Morris v. United States,* 37 Fed.Cl. 207, 213 (1997).

### CONCLUSION

For the foregoing reasons, it is **ORDERED:**

(1) That Amtrak's motion for a protective order is **GRANTED** in part and **DENIED** in part;

(2) The State's motion for a protective order is **GRANTED** in part and **DENIED** in part;

(3) CPI's motion to compel discovery from non-party Amtrak is **GRANTED** in part and **DENIED** in part;

(4) CPI's motion to compel discovery from non-party State of Rhode Island is **GRANTED** in part and **DENIED** in part;

(5) The State's motion for sanctions is **DENIED;** and

(6) CPI's motion for sanctions and costs is **DENIED.**

---

4. In a footnote in its Reply brief submitted to the Court, the State questioned whether this Court had jurisdiction to enforce a subpoena against a non-party state government. This issue is moot if the State complies with this order. *See* 28 U.S.C. § 2521.