**528**

LITTON INDUSTRIES, INC., Litton Systems, Inc., Litton Great Lakes Corporation, Erie Marine, Inc., Plaintiffs,

v.

CHESAPEAKE & OHIO RAILWAY COMPANY, Baltimore & Ohio Railroad Company, CSX Transportation, Inc., Bessemer & Lake Erie Railroad Company, USX Corporation, Transtar, Inc., the Blackstone Group, Defendants.

No. 89–MISC–124.
Civ. A. No. C81–371.

United States District Court,
E.D. Wisconsin.

Feb. 7, 1990.

Richard Ninneman, Milwaukee, Wis., Laurence Shiekman, Philadelphia, Pa., for plaintiffs.

Marcia Press Kaplan, M. Lee Doane, Washington, D.C., Bruce McIlnay, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

AARON E. GOODSTEIN, United States Magistrate.

Bay Shipbuilding Corp. and the Manitowoc Company, Inc., two non-parties to the above-entitled action which is pending in the Northern District of Ohio, have filed motions to quash subpoenas for production of documents served upon them by plaintiffs (hereinafter referred to as "Litton"). Since the motions to quash are identical and since there is a unity of interest between the two movants, they will be referred to as Bay Shipbuilding.

By order dated December 19, 1989, Judge J.P. Stadtmueller referred the motions to this court for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.02. Following that reference, Bay Shipbuilding filed a motion for a protective order. All motions were fully briefed and this court entertained oral argument on January 22, 1990. Following that hearing, the "parties" to this dispute (Litton and Bay Shipbuilding) entered into a stipulation for a protective order which was signed by the court on January 29, 1990.

By way of brief background, Litton is the plaintiff in a civil action in the Northern District of Ohio against several railroads involved in the transportation of iron

ore in the Lake Erie area. Litton claims that the defendants engaged in a conspiracy to prevent Litton from competing in the transportation of such commodities. Litton was engaged in the business of construction, conversion, repair and maintenance of sea-going vessels at the time of the alleged conspiracy. Litton is seeking damages against the defendants pursuant to federal and state anti-trust laws for a period from approximately 1965 through 1981.

The lawsuit was filed eight years ago, and a trial date has been scheduled for May 2, 1990. The instant dispute was triggered by Litton's need to comply with a pretrial order of the district court requiring it to submit its damage calculations by February 1, 1990 (Litton indicated at the hearing that there may be some flexibility with this deadline in view of the pending motions to quash).

To date, Litton has engaged the services of experts who have developed their damage theories. However, Litton wishes to supplement its experts' theories with the actual experiences of companies that engaged in the same business during the period in question; that is where Bay Shipbuilding comes into the picture. Bay has been, and still is, in the business of serving the Great Lakes shipping market. It has constructed sea-going vessels, maintained and repaired such ships, converted existing vessels to self-loaders and operated a dock. Litton wants its experts to review Bay's records in order to ascertain what the actual profits of a company in the business were in the various categories under consideration.

Bay Shipbuilding objects on several grounds. First, it submits that Litton's request is massive; for example, regarding the area of ship construction alone, Bay has thirty file drawers of documents. Second, and more importantly, Bay claims much of the information requested is highly sensitive and, in the hands of a competitor, would provide that company with an unfair advantage. Bay claims that Litton is such a company. Next, Bay contends that disclosure of some of this information

to its present customers, certain defendants in this lawsuit, would have a serious adverse effect on its customer relations. Finally, Bay asks why does it, an "innocent bystander", have to produce confidential information for litigation in which it is not involved.

Litton responds by submitting that an appropriate protective order specifically addressing each of Bay's concerns can be fashioned to maintain the confidentiality of this information. Litton says that it is an "innocent victim" of the defendants' conspiracy and, in order to persuade the jury that its claim for damages is based in reality, it needs the records of a company like Bay who has been engaged in the business that Litton attempted to enter.

This court's legal analysis is governed by Rules 45 and 26 of the Federal Rules of Civil Procedure. Rule 45(b) provides, in part, that the court may quash or modify a subpoena for documents "if it is unreasonable and oppressive." Rule 45(d) states that the subpoena may command the person to produce documents within the scope of Rule 26(b), but subject to the provisions of Rule 26(c). Rule 26(c) authorizes the court in the district where the deposition is to be taken to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

█ Rule 26(b) provides the framework of relevancy to this discovery dispute. There is no meritorious contention here that the documents requested are not relevant. While the probative value of these documents can be argued, there is no question that they are germane to Litton's damage calculations. They arguably form a "reality" aspect of damages which can buttress the experts' theoretical scenarios; they provide a "yardstick" measure for the profits Litton claims they were deprived of making. Bay's objections to relevancy are not persuasive in supporting a motion to quash on that basis alone, but are more appropriate to consider when applying the balancing test of Rule 26(c).

Bay Shipbuilding is resisting discovery and thus it is incumbent upon Bay to estab-

lish that the subpoena should be quashed, modified or subject to a protective order. Here, Bay submits that it has satisfied its burden by demonstrating that the information is confidential. In discussing the application of Rule 26(c) to a similar situation involving discovery from a non-party, the court in the case of *Shields Enterprises, Inc. v. First Chicago Corporation*, 1988 Westlaw 142200 (N.D.Ill.1988), succinctly states,

> If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information.

*Id.* at 4.

The first question to be addressed is whether Bay Shipbuilding has established that the information it seeks to protect is confidential. Based upon the representations of the parties to this dispute, it appears that Bay is willing to produce for inspection documents relating to its construction of certain vessels. Apparently, Bay is willing to concede that this is historical data and disclosure would not be injurious to its present business. These documents, which will be subject to the stipulated protective order, are now being reviewed by Bay's attorneys to ascertain if it will object to disclosure of any particular documents within this general category.

Parenthetically, this court concurs with the discovery of the ship construction documents. In this area, Litton claims that, absent the conspiracy, it would have constructed several maximum size self-unloading vessels. The alleged lost profits from the construction and sale of these vessels has been limited to a discrete time period, 1969–1975. To calculate damages, Litton's experts have arrived at a profit margin based upon various factors. Therefore, the actual experience of a Great Lakes shipbuilder, *i.e.* Bay Shipbuilders, during this period would provide Litton with actual profit margins. The information is rele-

vant to Litton while, at the same time, its disclosure is not harmful to Bay.

■ The same conclusion cannot be reached with regard to the other areas of damage claimed by Litton which are vessel operations, dock operations, repair and maintenance and conversion of vessels. Here Bay submits that disclosure of this information would provide a competitor with an unfair advantage and would harm present customer relationships. Even though some of these documents are not of recent vintage, Bay contends that the nature of its business has not changed significantly and a customer or competitor could easily extrapolate current costs and profits from these records.

Litton does not seriously dispute Bay's claim of confidentiality. Litton takes the approach that a protective order can be crafted to reasonably ameliorate Bay's concerns. For example, disclosure can be limited to certain experts and counsel; at trial, the courtroom can be cleared of all customers and competitors so that only the jury will remain.

This court finds that the remaining categories of documents are confidential and now addresses the next issue of whether Litton's need for disclosure outweighs Bay's privacy concerns. As a starting point, the courts have recognized a non-party's right to privacy in its financial affairs. See, *Hecht v. Pro–Football, Inc.*, 46 F.R.D. 605, 607 (D.C.1969).

It is incumbent upon to Litton to show that its needs "outweigh the burden and invasion of corporate privacy that would result to … a non-party to this action." *In re Electric Weld Steel Tubing Antitrust Litigation*, 512 F.Supp. 81, 84 (N.D. Ill.1981). Although it is difficult for this court (also a "non-party" to the action) to accurately assess Litton's need for this information without having full knowledge of its various damage theories, a review of Litton's recent responses to one of the defendant's interrogatories concerning damages has proved instructive.

As indicated earlier, Litton is seeking a reality component to its damage calculations. It can be envisioned that Litton's

experts will use Bay's figures to support their theories. By the same token, defendants' experts will attack these figures as not being probative; defendants' experts will submit that there are simply too many variables to make Bay's experience relevant. In other words, Bay's place in the competitive market is not equal to, nor a yardstick for, what Litton's could have been.

In addition, judging from Litton's interrogatory answers, in some areas the need for Bay's figures may not be as compelling. In this regard, it is interesting to note that Litton refers to utilization of Bay's actual figures only once; this is for vessel construction damages. See, Litton's amended response to the second consolidated set of interrogatories and document request of defendant CSX Transportation, Inc., dated November 30, 1989, at p. 15.

In the area of damages for lost profits from vessel operation, Litton indicates that it will use the experience of Wilson Marine Transit which it acquired in 1968. Wilson had been an independent fleet operator and primary carrier for two steel companies before being acquired by Litton. It would seem that utilization of Wilson which operated in the service area in question is far more probative than Bay's profits in this category of damages. See, Litton's response at pp. 23–29.

Similarly, in the category of lost profits from maintenance and repair of vessels, Litton says that its Erie Marine Yard would have flourished since Lake Erie is a warm water port with a protected harbor. See, Litton's response at pp. 31–32. Is anything in Bay's experience applicable here? Does it conduct its repair and maintenance activities under circumstances similar to Erie Marine Yard or are the variables too great so as to diminish any probative value Bay's figures would have?

This court is not persuaded that the records of Bay Shipbuilding in the areas other than ship construction are as essential to proof of damages as claimed by Litton. This court also believes that the harm of disclosure to Bay is greater than the value to Litton.

Finally, this court is not sanguine that a protective order could be constructed to sufficiently maintain the confidential nature of this information. The information would, of course, have to be disclosed to Litton's experts. Like all experts, these individuals, often professors, are regularly called upon for assistance. This is one of the things that makes them "experts." But once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained from Bay will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained from Bay?

There is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought. Litton has failed to make such a showing.

This court concludes that as to the documents in the non-ship construction categories, Bay Shipbuilding is entitled to relief under Rule 26(c)(1), "that the discovery not be had." The court will grant, in part, Bay's motion to quash the subpoena for production of certain documents.

Finally, the request of Bay Shipbuilding for the award of expenses in accordance with the provisions of Rule 37(a)(4) shall be denied. This court believes that the position of Litton in seeking the subpoena was substantially justified.

IT IS THEREFORE ORDERED that the motions to quash the subpoenas be GRANTED, in part, in accordance with this

decision. The award of reasonable costs and expenses is DENIED.