**GREATER ROCKFORD ENERGY AND TECHNOLOGY CORP., et al., Plaintiffs,**

v.

**SHELL OIL COMPANY, et al., Defendants.**

No. 90–3119.

United States District Court, C.D. Illinois, Springfield Division.

July 8, 1991.

Wendell W. Wright, Wright & Wright, Danville, Ill., Bob F. Wright, Domengeaux & Wright, Lafayette, La., Lloyd W. Gathings, Gathings & Davis, Birmingham, Ala., Gregg R. Potvin, Taylor Thiemann & Aitken, Washington, D.C., Wayne M. Liao, Spiegel Liao & Kagay, San Francisco, Cal., for plaintiffs.

John V. Potter, Jr., White Sulphur Springs, Mont., for Alcotech, Inc.

Steven G. Durio, Jeffrey Ackermann, Christine B. Roberts, Durio McGoffin & Stagg, Lafayette, La., for Agrifuels Refining Corp.

Peter M. Sfikas, Peterson & Ross, Chicago, Ill., Carl D. Haggard, A.M. Minotti, Shell Oil Co., Ann Spiegel, Houston, Tex., for Shell Oil Co.

James C. Kearns, Edward M. Wagner, Heyl Royster Voelker & Allen, Urbana, Ill., John H. Stroh, Findlay, Ohio, Dan D. Sandman, Findlay, Ohio, Ronald Teeple, John Leonard, Defrees & Fiske, Chicago, Ill., for Marathon Petroleum Co.

Thomas A. Gottschalk, David A. Rammelt, Kirkland & Ellis, Chicago, Ill., Robert E. Gillespie, Hinshaw & Culbertson, Springfield, Ill., John Jenkins, Gunn & Hickman, Danville, Ill., Martin J. Keating, Gerard J. Carpency, Chicago, Ill., Michael E. Rigney, J. Andrew Langan, Kirkland & Ellis, Chicago, Ill., Amy J. Berenson, Kirkland & Ellis, Washington, D.C., for Amoco Oil Co.

Thomas W. Kelty, Pfeifer & Kelty P.C., Springfield, Ill., Harry P. Davis, Jr., John E. Bailey, David L. Martindale, Houston, Tex., Joseph M. Burton, San Francisco, Cal., John H. Long, Pfeifer & Kelty, P.C., Springfield, Ill., Keith E. Parks, Mark A.

Cervenka, Chevron Corp., David L. Ream, Houston, Tex., for Chevron U.S.A., Inc.

Gary R. Lietz, Flynn Palmer Tague & Lietz, Champaign, Ill., Otis Pratt Pearsall, Hughes, Hubbard & Reed, New York City, Philip H. Curtis, Bruce R. Kelly, Robert C. Mason, Hughes Hubbard & Reed, New York City, Donald A. Brigh, Dean M. Harris, Atlantic Richfield Co., Los Angeles, Cal., Ronald C. Redcay, Hughes, Hubbard & Reed, Los Angeles, Cal., for Atlantic Richfield Co.

Joseph Dattilo, Cleveland, Ohio, for B.P. America.

C.W. Dukes, David J. Ryan, Dukes Martin Helm & Ryan Ltd., Danville, Ill., H. Blair White, Nathan Eimer, Krista Edwards, Andrew G. Klevorn, Sidley & Austin, Thomas Bush, Jr., Saunders & Monroe, Chicago, Ill., for Citgo Petroleum Corp.

Thomas Jackson, Jones, Day, Reavis & Pogue, Dallas, Tex., Larry Douglas, San Antonio, Tex., for Diamond Shamrock R & M, Inc.

Robert G. Abrams, Joanne E. Caruso, Howrey & Simon, Washington, D.C., for Exxon Co. U.S.A.

Patrick J. Ahern, Jeffery M. Cross, Ross & Hardies, Chicago, Ill., Charles F. Rice, Dennis Wilson, Mobil Oil Corp., New York City, for Mobil Corp.

A. James Shafter, Kehart Shafter Hughes & Webber P.C., Scott A. Roberts, Decatur, Ill., for Archer Daniels Midland Co.

Neil Hartigan, Asst. Atty. Gen., Springfield, Ill., Bart T. Murphy, Asst. Atty. Gen., Robert E. Davy, Jr., Lison & Pullman, John McCaffrey, Atty. Gen. Office, Citizens Rights Div., Chicago, Ill., for the People.

Leslie J. Schiff, D. Patrick Keating, Sandoz, Sandoz & Schiff, Opelousas, La., for Cajun Energy, Inc. and Public Terminals Inc.

David R. Samuelsen, Poole & Samuelsen, Boise, Idaho, for Ethanol Marketing.

## ORDER

RICHARD MILLS, District Judge:

This cause is before the Court on Defendants' (Shell Oil Company, Marathon Oil Company, Amoco Oil Company, Chevron U.S.A., Inc., Atlantic Richfield Co., B.P. America, Exxon Company, USA and Mobil Corporation) motion to enforce compliance with a subpoena for the production of documents and to compel testimony from Archer–Daniels–Midland (ADM) pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure. Defendants also move for an award of expenses, including attorneys' fees and costs incurred in relation to this motion pursuant to Rule 37(a)(4). Defendants request oral argument on this motion.

In response, ADM, who is not a party to the present litigation, moves to quash the subpoena in question under Rule 45(b). ADM's main objections to the subpoena are based on the confidentiality of the documents, the relevance of the documents with regards to the litigation, and the unreasonable burden on ADM to produce the documents. ADM also requests that Defendants pay for all reasonable and necessary incurred expenses and costs including attorney's fees associated with producing the requested documents. ADM also moves for oral argument on this motion.

### Facts

Plaintiffs, Greater Rockford Energy and Technology Corp., *et al.*, began this litigation by filing a complaint on June 1, 1988, against Defendants. Plaintiffs allege Defendants violated 15 U.S.C. §§ 1, 2, and 26a by conspiring to destroy the ethanol and gasohol markets as alternative fuels to gasoline. Upon stipulation of counsel for Plaintiffs and Defendants, Judge Baker allowed a protective order to be placed on discovery documents and information. The protective order designates the documents as "Confidential" or "Highly Confidential." A "Confidential" designation limits access to the documents and information to the following people: counsel for Plaintiffs or Defendants and their legal and clerical assistants; experts or consultants who are

not in the regular employ of any party; witnesses and their counsel during the course of hearings or depositions; the Court and its regularly employed personnel; stenographic reporters not employed by the Court, but who are incident to the proceedings of this action; and counsel who are obtained, when one party intends to disclose protected documents and information. A "Highly Confidential" designation allows access to all of the people listed above, except the witnesses and their counsel.

On January 7, 1991, Defendants filed a subpoena duces tecum with the Court requesting that ADM produce certain documents and testimony. These requests asked ADM to produce ethanol-related documents and information from January 1, 1978, to the present. ADM, who is not a party to the present litigation, complied with some of the requests (in particular, Requests 3(a), 3(c), 3(d), 3(h), 12, 13, 16, and 17). As to Requests 1, 2, 5, 7, and 10, ADM's attorney advised that it had no documents for these requests. For Requests 6, 8, and 9, ADM released only public documents. With regards to the remaining requests (Requests 1, 3(b), 3(e), 3(f), 3(g), 3(i)–3(n), 4, 11, 14, and 15), ADM objected to producing such information based on the confidentiality of the documents, the relevance of the documents to the litigation, and the burden of producing the documents. Defendants responded to these objections by asking the Court to compel ADM to produce these missing documents and testimony pursuant to Rule 37(a).

### Analysis

Rules 45 and 26 of the Federal Rules of Civil Procedure govern the Court's legal analysis. Rule 45(b) allows a court to quash or modify a subpoena for documents "if it is unreasonable and oppressive." Rule 45(d) states that the subpoena may command the person to produce documents within the scope of Rule 26(b), but subject to the provisions of Rule 26(c). Rule 26(c) authorizes the use of protective orders in discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this case, an order has been entered to protect sensitive and confidential information that has been obtained from discovery of the parties and the nonparties involved in this litigation.

Despite the protective order, ADM still claims that the subpoena should be quashed based on the confidentiality of the requested information. The requested information pertains to ADM's production and sale of ethanol, ADM's market share in the ethanol industry, and ADM's involvement with various legislative and legal matters. ADM states that Defendants, as well as Plaintiffs, are direct competitors of ADM, and that if either of the parties had access to any of this information, it would seriously damage ADM's bargaining position and the sale of its ethanol products.

Defendants do not dispute ADM's claim of confidentiality concerning this information. Yet Defendants maintain that the harm of the disclosure of this confidential information has been minimized by the protective order and that all the parties and nonparties in this litigation have been able to use the order to successfully protect their sensitive and confidential documents and information.

The Court recognizes the possible harm that ADM could suffer if its competitors did obtain confidential information concerning its financial affairs, marketing strategies, and production-output figures. However, it is not the magnitude of the potential harm that could occur from disclosure, but rather, the likelihood that such harm could occur at all. *Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 47 (1980). Here, the Court finds that the likelihood of such harm occurring is minimal. The Court "will not readily assume that the attorneys who signed the protective order, and who must 'scrupulously maintain the security of' confidential information disclosed under it will ignore their duties or fail to impress the seriousness of them on all others who are permitted access to such information." *Citicorp.*, 87 F.R.D. at 47.

Nonetheless, when protection from disclosure is sought, the Court "must apply a

balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir.1984) (quoting *Equal Employment Opportunity Commission v. University of Notre Dame du Lac*, 715 F.2d 331, 338 (7th Cir.1983)). Moreover,

> if it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information.

*Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 530 (E.D.Wis.1990) (quoting *Shields Enterprises, Inc. v. First Chicago Corp.*, 1988 Westlaw 142200 (N.D.Ill.1988)).

Discovery of certain information may not be allowed if it is not "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The Supreme Court has clarified this amorphous term by stating:

> The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Even if the information is relevant, discovery is not allowed if the person seeking discovery fails to show their need for the information, or compliance with the request is unduly burdensome or oppressive, or where the harm of disclosure outweighs the need of the person seeking discovery of the information. Fed.R.Civ.P. 26(b)(1); *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 739–42 (Fed.Cir.1987).

Thus, in deciding whether to compel ADM to answer Defendants' request for documents, the Court must balance the interests involved. In balancing these interests, the Court will look to the following factors: the relevance of the requested information to the present litigation, Defendants' need for the information, whether the requests are burdensome, the fact that ADM is a nonparty, and the fact that the disclosure of the information is being made to competitors of ADM. Considering these factors, the Court turns to the requests themselves.

### The Requests

ADM has complied with some of Defendants' document requests (Requests 3(a), 3(c), 3(d), 3(h), 12, 13, 16, and 17). The other requests which Defendants claim ADM did not comply with are the focus of this order. These requests are the following: Requests 1, 2, 3(b), 3(e), 3(f), 3(g), 3(i)–3(n), 4–11, 14, and 15.

ADM's counsel represented that ADM had no documents for the following requests: industry feasibility studies (Request 1), ADM's competitive position and market share (Request 1 and 2), competition and competitors in the ethanol industry (Request 5), the effects of subsidies and tax credits on ADM and the ethanol industry (Request 7), and lobbying activities (Request 10). Defendants responded that ADM should certify that it has no documents concerning these specific requests.

ADM has sworn affidavits that state that ADM has no documents responsive to these requests. Furthermore, Defendants have not shown that the representations in these affidavits are false. Thus, the Court finds no reason to doubt the veracity of ADM's representations and finds that ADM did not possess these documents to comply with these particular requests.

■ ADM only released public documents regarding the following: the actual or projected effect of ethanol imports on the sales price of ethanol in any geographic area (Request 6), ADM's action to have the Louisiana tax incentive for ethanol and gasohol declared unconstitutional (Request 8), and any ethanol-related litigation that involves ADM (Request 9). In a conclusory fashion, Defendants stated that these re-

sponses to the subpoena were inadequate. Defendants have not shown how ADM's responses were deficient, and thus, the Court has no basis for finding that ADM's responses were inadequate. Therefore, ADM will not be compelled to produce more documents in response to Requests 6, 8, and 9.

In response to Requests 1, 3(f), 3(g), 3(i)–3(n), 4, 11, 14, and 15, ADM objected to producing these documents based on confidentiality, relevance, and burden. With regards to these requests, the Court must balance Defendants' interest in disclosure and ADM's privacy interest in light of the aforementioned factors.

■ Defendants' Request 1 states:

All documents that constitute or relate to market studies, reports, tests, feasibility studies, strategic plans, budget plans or other analyses concerning the subject of oxygenated fuels or oxygenates, including but not limited to documents that refer or relate to actual or projected supply and demand, ADM's competitive position (in terms of costs, marketing, price and other factors) vis a vis other ethanol producers, and documents concerning the price or other relationships (competitive or otherwise) between ethanol and gasoline, MTBE, ETBE, or any other oxygenated fuels or oxygenates.

ADM states that it has no documents for this request. Edward A. Harjehausen, the Vice President of ADM's marketing branch, states in his affidavit that "ADM does not undertake to assemble and maintain information on the ethanol industry." (Harjehausen affidavit, ¶ 12(b)). Rather, ADM receives such information from industry publications such as *Alcohol Outlook, Oxy–Fuel News, Octane Week,* and *Alcohol Week.* ADM suggests that the answers to this request can be gleaned from these authoritative publications. However, ADM does object to producing documents discussing projected demand stating that these documents are confidential and irrelevant. ADM asserts that Defendants can purchase from the marketplace a comprehensive study analyzing legislative effects on oxygenate supply and demand, pricing of gasoline and oxygenates, and motor fuel composition.

Also ADM objects to producing documents regarding the relationship of the price of ethanol to unleaded gasoline on a customer-by-customer basis. The basis of this objection is confidentiality and burden. ADM states that it would be burdensome to review between 500 and 1,000 customer files for the past 12 years for the purpose of showing the relationship of the price of ethanol to unleaded gasoline. Furthermore, ADM asserts that some of the Defendants can assemble information on its relationships since they are customers of ADM.

Defendants state in their memorandum in support of their motion to compel that the information sought is relevant to their defense in this action. Their defense asserts that it was the market conditions, not Defendants' action, which drove Plaintiffs out of the ethanol business. Defendants state that the ADM market studies and the like are clearly relevant to such a defense.

The Court does not question the relevance of this request; however, it does question Defendants' need of such information. Defendants failed to produce any evidence that their need of this information outweighs ADM's burden of producing the documents and the potential harm that ADM could suffer from disclosure. Moreover, the Court questions the propriety of Defendants asking ADM, a nonparty, to bear the burden and the cost of producing this information when Defendants can easily get it from the marketplace. Therefore, the Court finds that Defendants failed to carry their burden to support their motion to compel ADM to produce documents for this specific request and that the response of ADM was adequate.

■ Defendants requested information concerning production costs and capacity of ADM's four production plants in Request 3 and Defendants requested actual or projected costs of producing ethanol and the price it is sold in Request 4. Defendants hope to use information gained by Requests 3 and 4 to make a comparison of ADM's production plants and Plaintiffs'

ethanol plants. By comparing the two, Defendants hope to show that it was not Defendants' actions, but rather Plaintiffs' inefficient plant operations that caused Plaintiffs' financial downfall. ADM objected to Request 4 and the following parts of Request 3:

Request 3(b)—Cost of building each plant.

Request 3(e)—Type of process of each plant, including change and process by plant.

Request 3(f)—production capacity by plant.

Request 3(g)—storage capacity by plant.

Request 3(i)—actual production by plant by month.

Request 3(j)—type and cost of corn used by plant.

Request 3(k)—cost of producing ethanol by plant including energy savings from co-generation.

Request 3($l$)—transportation methods, including cost of transportation, by plant.

Request 3(m)—ethanol purchases by customer by state by month by plant.

Request 3(n)—nonethanol purchases by customer by state by month by plant.

Confidentiality, relevance, and burden were the basis for ADM's objections to these requests.

ADM asserts that its plants use a different technology and process than the ethanol plants of Plaintiffs. ADM produces many corn-derived food products in addition to ethanol at its plants, while the plants of Plaintiffs only produce ethanol. Therefore, ADM's costs of production are vastly different than that of Plaintiffs. ADM claims that it does not calculate individual plant production capacity because the production of ethanol from any plant is part of an overall supply which is sold through extensive distribution centers. However, ADM did supply a figure for its overall ethanol production capacity. ADM asserts that the information sought by Request 3(b), 3(e), 3(f), 3(g), 3(i)–3(k) is not relevant to Defendants' case because of the differences in the production plants.

Furthermore, ADM objects to the unreasonable burden of producing the informa-

tion for Request 3(f), 3($l$)–3(n). For Request 3(f), ADM would have to reconstruct theoretical capacity on a plant by plant basis over a 12 year period. For 3(1), ADM cannot determine the cost of transportation by plant, since the ethanol shipments are done from the distribution centers. However, ADM did explain the transportation method used. For Request 3(m) and 3(n), ADM asserted that they could not respond to these requests because of the large number of ethanol and nonethanol customers dating back to January 1, 1978. With regard to Request 4 (which requests information relating to the actual or projected cost of producing ethanol and the sale price of ethanol), ADM asserts that it cannot respond to this request because it is too burdensome. ADM states they cannot predict the price of corn and thus cannot project cost of production. Also, ADM claims that the sale price of ethanol can be found in the trade publications and that some of the Defendants know the sale price, since they are customers of ADM.

ADM also objects to parts of Request 3 and Request 4 on the basis of confidentiality. ADM claims that a disclosure of its production costs for ethanol to Defendants, who are ADM's competitors and customers, could cause irreparable damage to ADM's bargaining position concerning the sale and the price of ethanol.

The Court finds that these particular requests of Defendants are only marginally relevant because of the vast differences between ADM's production plants and Plaintiffs' ethanol plants. The Court finds that some of these requests (Request 3(f), 3($l$)–3(n), and 4) are unduly burdensome. More importantly, all of these particular requests by Defendants require disclosure of confidential and sensitive information. Courts have presumed that disclosure of sensitive information to competitors is more harmful than disclosure to a noncompetitor. *Coca Cola Bottling Co. v. Coca Cola Co.*, 107 F.R.D. 288, 293, 299 (D.Del. 1985). Here, Defendants, as competitors, could easily gain financial advantage over ADM and erode ADM's negotiating power by discovering ADM's cost production for

ethanol. The marginal relevance which Defendants rely on is not enough to compel and burden ADM to produce such information; nor does it even remotely justify the potentially irreparable financial harm that ADM could suffer because of the disclosure of this information. Therefore, the Court will not compel ADM to answer these particular requests, so that Defendants can compare "apples and oranges."

■ Defendants' Request 11 states:

All documents that discuss or relate to any trade or industry organization activities or other group activities or individual activities by ADM, the Renewable Fuels Association (RFA) or any of its members concerning ethanol, gasohol, or any other oxygenated fuels or oxygenates, including without limitation documents concerning the American Petroleum Institute (API), the American Society for Testing and Materials (ASTM), the National Corn Growers Association, the Illinois Corn Growers Association, or the Ohio Corn Growers Association.

In support of their defense, Defendants request this information to show that payments to trade associations and association activities are common to all industries including the ethanol industry. ADM claims that the production of documents relating to membership dues paid to various trade associations is beyond the scope of the request, irrelevant and burdensome to compile. The Court finds that the scope of Request 11 is far broader than the argument Defendants offered in support of their motion to compel. The Court finds Defendants' argument justifies compelling ADM to produce all documents relating to ADM's membership in, and dues and fees paid to, the various trade or industry organizations as listed in Defendants' Request 11.

■ Defendants' Request 14 states:

On a monthly, quarterly and annual basis, documents sufficient to show ADM's revenues from the sale of ethanol, profits from the sale of ethanol, and assets and liabilities relating to the sale of ethanol.

ADM objected to this request stating that its profits and losses are not relevant to the present litigation and that such information is confidential. ADM claims disclosure of this information to Defendants could once again irreparably damage ADM's future sales and negotiating power. Defendants state that they need this information in order to analyze Plaintiffs' allegations concerning the relevant product and geographic markets, and to perhaps establish a competition defense.

The Court must balance Defendants' need for these documents and the relevance of them against ADM's need for confidentiality. Once again the Court finds Defendants have not carried their burden and that Defendants' need and the relevance for this information is not sufficient to outweigh ADM's privacy concerns. ADM and Defendants are in direct competition concerning the sale of ethanol. Independent buyers for gasoline can either purchase pure gasoline or gasoline with 10% ethanol. Thus, Defendants and ADM compete for many of the same customers. If Defendants were able to obtain ADM's sales records, the financial effects on ADM could be even more devastating than if ADM disclosed its production costs. Hence, it is understandable that ADM does not even want to risk disclosure of this information, despite the existence of a protective order. Even if the information was classified "Highly Confidential," it would still¹ be disclosed to Defendants' experts. The Court refuses to compel disclosure in this case because, as another court reasoned,

Once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained ... will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to

compartmentalize all he or she has learned and not use any of the information obtained ...?

*Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D.Wis.1990). Furthermore, the *Litton* court correctly states, "There is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a nonparty is sought." *Litton*, 129 F.R.D. at 531. The Court adopts this line of reasoning in denying Defendants' motion to compel ADM to produce documents responsive to this particular request.

■ Defendants' Request 15 states:

All annual reports and periodic reports to shareholders of ADM as well as any financial documents filed by ADM with local, state or federal agencies.

ADM complied with most of this request by producing quarterly and annual reports, including filings with the SEC, from 1978 until the present. However, Defendants wanted ADM's tax returns also. ADM objected that the tax returns were not within the scope of Request 15, and that ADM would not produce and disclose them. Defendants have not shown how ADM's tax returns could be relevant to this litigation, and thus, the Court finds Defendants have failed to carry their burden to compel production. Therefore, the Court denies Defendants' motion to compel ADM to produce its tax returns and the Court finds that ADM has adequately produced documents in compliance with Request 15.

Thus, the Court has allowed in part and denied in part Defendants' motion. The Court has allowed Defendants' motion to compel ADM to respond to Defendants' Request 11 as modified by the Court. However, the Court has denied Defendants' motion to compel ADM to respond to Defendants' Requests 1, 3(b), 3(e), 3(f), 3(g), 3(i), 3(j), 3(k), 3(*l*), 3(m), 3(n), 4, 14, and 15. The Court has also found that ADM has satisfactorily complied with Defendants' remaining requests.

### Award of Expenses for Defendants' Motion to Compel

■ Pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure, Defendants move for an award of expenses including attorneys' fees and costs, incurred in relation to this motion to compel ADM to respond. The relevant part of Rule 37(a)(4) states: "If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." After ruling on this motion and in light of the language of the Rule, the Court orders that Defendants and ADM bear their own costs and attorneys' fees incurred concerning the instant motion to compel.

### ADM's Request of Payment of Costs and Expenses

In their response to the motion to compel, ADM requests the Court to order Defendants to pay all costs and expenses reasonably incurred by ADM in production of the documents requested. These costs and expenses include payment for employees to search, accumulate, and compile the documents to be produced and attorneys' fees for review of those documents. The Court denies this request without prejudice. However, the Court will allow ADM to file a formal motion for payment of costs and expenses after ADM has reviewed the disposition of Defendants' instant motion to compel.

### Oral Argument

Defendants and ADM have moved for oral argument on Defendants' motion to compel ADM to produce documents and testimony. The Court denies ADM's motion as moot.

### Conclusion

In regards to Defendants' motion to compel ADM to produce documents and testimony (d/e 448, 482), the Court observes that Defendants have requested the most vital and sensitive information on the operation of ADM's business. If the Court were to order everything that Defendants

have moved to compel to be produced, it would put Defendants, many of whom are both customers and competitors of ADM, in a position where they could later cause ADM financial harm. The broad scope of Defendants' requests is patently unreasonable.

*Ergo*, Defendants' motion to compel ADM to produce documents and testimony (d/e 448, 482) is ALLOWED IN PART as to Request 11 as modified by the Court and DENIED IN PART as to Requests 1, 2, 3(b), 3(e), 3(f), 3(g), 3(i), 3(j), 3(k), 3(*l*), 3(m), 3(n), 4, 5, 6, 7, 8, 9, 10, 14, and 15, and as to Defendants' request for an award of costs and expenses in relation to Defendants' motion to compel, and for oral argument.

ADM's request for Defendants to pay ADM's costs and expenses incurred by compliance with Defendants' motion to compel is DENIED WITHOUT PREJUDICE. ADM's motion for oral argument is DENIED AS MOOT (d/e 466).