**INSULATE AMERICA, Plaintiff,**

v.

**MASCO CORPORATION; Masco Contractors Services Group Corp.; Service Partners LLC; Masco Contractor Services LLC; Masco Contractor Services Central, Inc.; and Masco Contractor Services East, Inc., Defendants.**

No. 1:04MC32–T.

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 13, 2005.

Aretha V. Blake, Parker, Poe, Adams & Bernstein, Eric D. Welsh, Parker, Poe, Adams & Bernstein, Charlotte, for Insulate America, Plaintiff.

Christina G. Sarchio, Howrey Simon Arnold & White, LLP, Washington, DC, L.D. Simmons, Helms, Mulliss & Wicker, PLLC, Charlotte, Margaret M. Zwisler, Howrey Simon Arnold & White, LLP, Melissa A. Gittings, Howrey Simon Arnold & White, LLP, Richard A. Ripley, Howrey Simon Arnold & White, LLP, Washington, DC, for Masco Corporation, Masco Contractors Services Group Corp., Service Partners, LLC, Masco Contractor Services LLC, Masco Contractor Services Central, Inc., Masco Contractor Services East, Inc., Defendants.

**ORDER**

HOWELL, United States Magistrate Judge.

**THIS MATTER** is before the court on the movant Insulate America's Motion to Quash Subpoena and for Protective Order and Amended Motion to Quash Subpoena and for a Protective Order. It appearing that the issues have been fully briefed and after a compete examination of all briefs and affidavits that have been filed, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I. Facts and Procedural History**

Insulate America, the movant in this action, is not a party to the principal action.

Insulate America, hereinafter referred to as "Insulate" is a cooperative whose members are involved in the business of installation of residential and commercial insulation. (D Beam Affidavit I ¶ 7). Insulate is not a buying group and is not involved in negotiating or determining the price paid by its members for residential insulation. (D Beam Affidavit II ¶ 3).

On October 22 2004, a clerical assistant of Insulate found an envelope containing a subpoena issued by the defendants laying on the doorstep of Insulate's office, which is located in Shelby, North Carolina. (Hammrick Affidavit ¶ 1–4). This subpoena had been issued at the request of the defendants' counsel on October 15 2004, and shall hereinafter be referred to as "Subpoena No. 1". Thereafter, Insulate objected to the subpoena and filed a motion on October 29 2004, to quash the subpoena and for a Protective Order, along with a supporting memorandum and affidavits, including an affidavit of David Beam.

Thereafter, on November 8, 2004, Insulate was served by the defendants with another subpoena, (hereinafter referred to as "Subpoena Number 2") which had been issued on November 5, 2004. Subpoena No. 2 was in the same form and requested the same information as Subpoena No. 1. Apparently the service of Subpoena No. 2 was made by the defendants to correct a noticeable lack of proper service of Subpoena No. 1.

On November 10, 2004, Insulate filed an amended motion to quash Subpoena No. 1 and Subpoena No. 2, and for attorney fees and costs. On November 15, 2004, the defendants filed a response to Insulate's first motion to quash and therein stated that the defendants had withdrawn Subpoena No. 1 because of improper service. The defendants contended that Insulate's Motion to Quash and for a Protective Order concerning Subpoena No. 1 was rendered moot.

Insulate thereafter filed a reply to the defendants' response again requesting that both subpoenas be quashed and that the defendants be ordered to pay fees in regard to the subpoenas.

Thereafter, on November 29 2004, the defendants filed a pleading entitled, "Defendants' Opposition to Plaintiff's Motion to Quash Subpoena and for Protective Order".

Additionally, the defendants filed a supporting affidavit of Christina G. Sarchio, an attorney for the defendants.

The plaintiffs thereafter filed a reply to the "Defendants' Opposition to Plaintiff's Motion to Quash Subpoena and for Protective Order" on December 8 2004 which was supported by a supplemental affidavit of David Beam.

## II. The Underlying Action in the Northern District of Georgia

The subpoenas that are referenced above were issued as the result of litigation that is pending in the United States District Court for the Northern District of Georgia. That action is entitled, *Wilson Insulation of Augusta, Inc. v Masco Corp.*, 1:03cv580 (N.D.Ga.). In that complaint, the plaintiffs have alleged in Count One that the defendant, Masco Corporation, *et al,* acting as a coordinator of manufacturers, has entered into horizontal agreements with manufacturers of residential insulation to sell materials to independent contractors at prices higher than they sell them to Masco, all on the condition that other manufacturers would do the same. In the complaint, *Wilson* contends that such alleged coordination on the part of Masco has:

> resulted in harm to price competition among manufacturers and higher prices and lower service in the installation of insulation in the Atlanta and Augusta [Georgia] markets, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.
>
> *Wilson* Complaint ¶ 49.

In Count 2, *Wilson* has alleged that Masco has entered into vertical agreements with insulation manufacturers that have purportedly caused harm to competition in the Atlanta and Augusta markets in violation of the Sherman Act. In Counts Three through Nine, *Wilson* has alleged Monopolization, Attempted Monopolization, Conspiracy to Monopolize, Conspiracy in Restraint of Trade, Price Discrimination, and Merger in the Atlanta and Augusta markets, all in violation of the Sherman and Clayton Acts. In Count Ten, *Wilson* seeks a permanent injunction under the Clayton Act and in Count Eleven *Wilson* has asserted a state-law claim for

tortious interference with contractual and business relations and opportunities.

## III. Subpoenas

The subpoenas issued by the defendants to Insulate are mirror images of each other and request that Insulate provide thirty-four (34) different types of documents. The subpoenas demand the production of the following:

1. All documents reflecting or referring to relating to rules, procedures, practices or structure of your association, including your Charter and Bylaws;

2. Copies of annual reports, newsletters or other publications, or minutes of any of your meetings, during the relevant period;

3. Documents sufficient to identify your officers and Board members during the relevant period;

4. Documents sufficient to identify your members during the relevant period;

5. All confidentiality agreements, or documents referring or relating to confidentiality agreements entered into by you and your members, during the relevant period;

6. All documents reflecting or referring or relating to the procedure or process used by your officers and Board members in approving members;

7. All documents reflecting or referring or relating to any communications during the relevant period among your officers or Board members regarding the approval of members;

8. All documents reflecting or referring or relating to the denial of applications for membership, including the applications themselves, during the relevant period;

9. Documents sufficient to identify the persons whose application for membership you have denied during the relevant period;

10. All documents reflecting or referring or relating to the benefits you provide to your members;

11. Documents sufficient to show the total dollar volume of purchases related to residential insulation by you from each supplier during the relevant period;

12. All documents reflecting or referring or relating proposed or actual transactions related to residential insulation between you and suppliers for rebates, discounts, or credits during the relevant period;

13. All documents reflecting or referring or relating to proposed or actual transactions related to residential insulation between you and your members during the relevant period;

14. All documents reflecting or referring or relating to any rebates, discounts, or credits related to residential insulation given to your members during the relevant period;

15. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Wilson Insulation during the relevant period;

16. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Leo Jones Insulation during the relevant period;

17. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Apple Valley Insulation during the relevant period;

18. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Broken Drum Insulation during the relevant period;

19. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Columbus Insulation during the relevant period;

20. All documents reflecting or referring or relating to any rebates, discounts, or credits given to Southland Insulators during the relevant period;

21. All documents reflecting or referring or relating to competition for residential insulation contracting services, including, but not limited to, documents concerning insulation contracting prices or market shares(s) of other residential insulation contractors;

22. All documents reflecting or referring or relating to changes or trends in the supply, sale, purchase or use of residential insulation during the relevant period;

23. All your financial plans or other financial documents during the relevant period;

24. All documents reflecting or referring or relating to Masco;

25. All documents reflecting or referring or relating to any communications between you and Masco concerning residential insulation contracting services during the relevant period;

26. All documents reflecting or referring or relating to any communications between you and Apple Valley concerning residential insulation contracting services during the relevant period;

27. All documents reflecting or referring or relating to any communications between you and Broken Drum concerning residential insulation contracting services during the relevant period;

28. All documents reflecting or referring or relating to any communications between you and Columbus Insulation concerning residential insulation contracting services during the relevant period;

29. All documents reflecting or referring or relating to any communications between you and Leo Jones concerning residential insulation contracting services during the relevant period;

30. All documents reflecting or referring or relating to any communications between you and Southland concerning residential insulation contracting services during the relevant period;

31. All documents reflecting or referring or relating to any communications between you and Wilson concerning residential insulation contracting services during the relevant period;

32. All documents reflecting or referring or relating to the lawsuit(s) that the Plaintiffs have brought against Masco;

33. All documents reflecting or referring or relating to any communications with Plaintiffs or any of Plaintiffs' representatives, including attorneys, concerning present or potential lawsuits against Masco;

34. All documents provided to you by any person concerning any present or potential lawsuit against Masco.

The affidavit of David Beam, president of Insulate describes the subpoenas as requesting "virtually every document concerning Insulate's business from its formation to today". (D. Beam Affidavit I ¶ 9). Mr. Beam further describes the subpoenas as seeking confidential business information of Insulate and its members:

In particular, Defendants seek documents that would disclose information that Insulate considers highly confidential commercial information, including the identity of Insulate members, manufacturer rebate information, and Insulate's financial information. Insulate maintains strict confidentiality concerning this and other information regarding its business and its members and does not disclose this information to the public or even other members. Insulate has entered into stringent confidentiality agreements with each of its members which precludes Insulate and its members from disclosing confidential information of Insulate to any other person. The business of insulation contracting is extremely competitive. The disclosure of any of these categories of information to Defendants or the Georgia Plaintiffs (who, in the case of Defendants, are commercial competitors of Insulate's members or, in the case of the Georgia Plaintiffs, belong to the National Insulation Contractors' Exchange, a group that competes with Insulate) would competitively harm Insulate and/or its members. If such information were disclosed to the parties in the Georgia action, or the public in general, Insulate's business would be severely harmed. Indeed, Defendants could use Insulate's confidential information in an effort to cause Insulate or its members to cease business operations. Further, as competitors of Insulate and its members, the parties may inadvertently use any information produced by Insulate to their economic advantage. (D Beam Affidavit I ¶ 11)

In paragraph 12 of his affidavit, Mr. Beam further avers:

> I also do not believe that the documents sought by Defendants in the third-party subpoena are relevant to the claims or defenses of the parties in the underlying action. Upon information and belief, the Georgia action relates to the Defendants' alleged anti-competitive activities with respect to the price of residential insulation in the Atlanta and Augusta, Georgia markets. None of the documents requested related to insulate's structure or membership (including, but not limited to documents related to insulate's structure, rules, practices, Charter, By–Laws; its annual reports, newsletters, and minutes; the identity of the members of its Board of Directors and the process by which the Board was selected; and the identity of its members and contractors which were rejected from membership) are relevant to the underlying action. In addition, the subpoena seeks the production of documents related to all of Insulate's members. Insulate's members are located throughout the United States. Of its members, only one does a limited amount of commercial business in the Atlanta market; none are in Augusta. Therefore, the vast majority of the documents sought relating to Insulate's members and their purchases of insulation are wholly irrelevant to the underlying action as they d not relate to the Atlanta or Augusta, Georgia markets. Further, since Insulate's business records do not distinguish between residential and commercial insulation, such documents would not be relevant to the underlying action, which is strictly based upon residential insulation sales. Finally, Insulate does not possess documentation of its member's pricing and therefore such documentation would need to be sought directly from individual insulation contractors by Defendants. (D. Beam Affidavit I ¶ 12)

It appears without question that the subpoenas require the disclosure of "other *confidential* research, development or *commercial information,*" as described and set forth in Fed.R.Civ. 45(c)(3)(B)(i).

## DISCUSSION

In the motion to quash, Insulate has raised five (5) issues which its contends require that the subpoenas be quashed. Those five issues are:

1. Improper service of Subpoena No. 1;
2. Failure of the defendants to provide a reasonable time to comply with Subpoena No. 1;
3. That the subpoenas subjects Insulate to undue burden;
4. That the subpoenas require the disclosure of confidential commercial information; and
5. That the subpoenas require the disclosure of information which is irrelevant to the underlying action.

It appears that proper service has now been made of Subpoena No. 2 and, therefore, the issue of service shall not be addressed. The court shall address the Fourth and Fifth issues regarding the disclosure of confidential commercial information and the relevance of the information requested. The court's decision as to those two issues shall resolve the issues concerning the amount of time that Insulate had to comply with the subpoenas and the allegations that the subpoenas subject Insulate to an indue burden.

As to disclosure of confidential information by a non-party, Federal Rule of Civil Procedure 45(c)(3)(B)(i) provides as follows:

> If a subpoena requires disclosure of a trade secret or other confidential research, development or commercial information, ...the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions. Fed. R. Civ. 45(c)(3)(B)(i).

A clear outline and review of the law regarding subpoenas for confidential· commercial information is set forth in *Anderson,*

*Greenwood & Co. v. Nibsco Supply, Inc.,* 1996 WL 377205 (W.D.N.Y.1996):

"A party may obtain discovery regarding any information relevant to the subject matter involved in the underlying action which is not privileged. Relevant information in the context of discovery is not limited to that which would be admissible at trial but rather is much broader and encompasses information that appears 'reasonably calculated to lead to the discovery of admissible evidence.'" F.R.C. v P 26(b)(1) Insomuch as courts reviewing ancillary discovery matters are frequently not familiar with the main action, they should be permissive where there is doubt whether the requested discovery can lead to the discovery of admissible evidence. *Heat and Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1024 (Fed.Cir. 1986) The burden is on the movant to establish that a subpoena duces tecum should be quashed. *U.S. v. Intern. Bus. Mach. Corp,* 83 F.R.D. 97, 104 (S.D.N.Y. 1979), or that a protective order should issue. *Culligan v. Yamaha Motor Corp., USA,* 110 F.R.D. 122, 125 (S.D.N.Y.1986), and the decision whether to quash or modify subpoena is left to the cognizant court's sound discretion. *Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir.1994) *In instances where a subpoena requires disclosure of a trade secret or other confidential or commercially sensitive information it 'should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the' party opposing such potentially harmful disclosure. F.R.Cv P. 45, Advisory Committee Notes, 1991 Amendment.* Further, and for good cause shown, a court in the district in which the discovery is to take place 'may make any order which justice requires* * * including* * *that the disclosure or the discovery not be had* * * [and/or] that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way.' F.R. Cv P 26(c)(1) and 26(c)(7) In making its determination, a court must evaluate all the circumstances and balance, *inter alia,* the requesting party's need for the information and the potential prejudice imposed on the requested party. *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.,* 813 F.2d 1207, 1210 (Fed.Cir.1987).

*Id.* at p. 2

■ A non-party such as Insulate, may seek from the court protection from discovery by the overlapping and interrelated provisions of Rules 26 and 45 of the Federal Rules of Civil Procedure. A non-party moving to quash a subpoena is in the same position as a party moving for a protective order that such discovery not be allowed. The court hearing the motion is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. *Mannington Mills. Inc. v. Armstrong World Industries, Inc.,* 206 F.R.D. 525 (D.Del.2002); *Micro Motion, Incorporated v. Kane Steel Co., Inc.* 894 F.2d 1318, 1323 (Fed.Cir.1990). In addition, other factors to be considered in the balancing test are set forth in *Anker v. G.D. Searle & Co.,* 126 F.R.D. 515 (M.D.N.C.1989), which are of particular interest when the party subpoenaed to produce documents is a non-party. *Anker,* at 519 and 522.

■ In applying the balancing standard concerning relevance, it appears immediately to this court that there is a question as to whether or not Insulate has any documents that are relevant to the Georgia action. In paragraph three (3) of the affidavit of Christina G. Sarchio, who is an attorney for the defendants, she states:

*Upon information and belief,* Insulate America is an exclusive organization comprised of independent contractors that, among other things, is able to negotiate special prices and discounts with the manufacturers of residential insulation for its members. In order to defend against Wilson's claims, MASCO must have, *inter alia,* information regarding prices and discounts that Insulate America has negotiated on behalf of its members.

(Sarchio Affidavit ¶ 3)

The affidavit of David Beam, president of Insulate, shows that Insulate is not involved in the type of business described by Ms. Sarchio nor does it have the information sought by the defendants.

Mr. Beam avers:

Insulate is a marketing and education co-operative. It is not a buying group and is not involved in negotiating or determining the prices paid by its members for residential insulation from manufacturers. Insulate is not involved in the actual purchases of any insulation products by its members. Insulate has never paid any money to an insulation manufacturer for the purchase of goods. Therefore, Insulate's records do not include any information with respect to the pricing of insulation products.

(D. Beam Affidavit II ¶ 3)

It appears to the court that Insulate does not have any relevant documents that could relate to the alleged non-competitive activities in the Georgia action. Additionally, few if any, of the documents requested have any relevance to the claims in the Georgia action; further, the request does not appear to seek any information that might lead to relevant evidence or information. In requests 1, 2, 3, 4, 5, 6, 7, 8, 9, and 23 seek information solely about Insulate and its various members and nothing concerning pricing of insulation. Requests 16, 17, 18, 19, 20, 26, 27, 28, 29, and 30 seek information from Insulate about parties who are involved in other pending litigation which also alleges a conspiracy to fix prices. (Sarchio Affidavit ¶ 7, footnote 1). Ms. Sarchio's affidavit refers to five (5) different complaints filed against the defendants in the Northern District of Georgia. In analyzing the requests contained in the subpoenas and comparing them with the affidavits of Beam and Sarchio, it is doubtful that any of the information requested from Insulate in the subpoenas has any relevance to the Georgia action.

Addressing the factor of "need", Ms. Sarchio further avers that she contacted an attorney for Insulate regarding documents that MASCO intended to request by means of subpoena and: "explained that MASCO deemed these documents necessary to defend the allegations in Wilson's complaint". (Sarchio Affidavit ¶ 6).

Later Ms. Sarchio contacted the attorney for Insulate and advised that she also needed the documents from Insulate in order to defend allegations in another series of complaints that had been filed against the defendants. (Sarchio Affidavit ¶ 7). However, these requests were based upon Ms. Sarchio's belief that Insulate had negotiated special prices and discounts with manufacturers of residential insulation. (Sarchio Affidavit ¶ 3). It appears clear that Insulate has not done so and does not conduct the type of business that Ms. Sarchio contemplated. (D. Beam Affidavit II, ¶ 3).

Even if Insulate had negotiated such prices, only one of its members does any insulation work in the Atlanta, Georgia market and that is in the commercial insulation business and not residential, with residential insulation being the subject of the Georgia action. (D. Beam Affidavit I, ¶ 12). A detailed examination of the affidavit of Ms. Sarchio does not show that there are stated any reasons why the defendants "need" the documents requested in the subpoenas other than two conclusory statements. (Sarchio Affidavit ¶ 6 & ¶ 7). Certainly no reasons showing "need" were expressed by Ms. Sarchio or the defendants regarding document requests 1 through 10 or document requests 16 through 20, 23 or 26 through 30.

The documents sought in the subpoenas seek confidential confirmation of Insulate, which was clearly established in the affidavit of the president of Insulate, David Beam. (D. Beam Affidavit I, ¶ 11). In addition, the Georgia plaintiffs and the defendants are competitors of Insulate's members. Mr. Beam states opines that the defendants could use Insulate's confidential information in an effort to cause Insulate or its members to cease business operations. (D. Beam Affidavit I, ¶ 11). Courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor, *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 107 F.R.D. 288 (D.Del.1985) The defendants and the plaintiff in the Georgia action as competitors of Insulate could easily gain financial advantage over Insulate and it members by use of the information requested in the subpoenas of the defendants. The defendants argue that a

Protective Order issued in the Georgia action would alleviate any concerns of Insulate. However, the defendants themselves have questioned whether or not the Protective Order adequately protects confidential information of the parties in the Georgia action. In defendants' Memorandum in Opposition to a Motion to Compel in the Georgia action filed November 28 2004, the defendants' counsel states:

> Even though there is a Protective Order in this case, Wilson's counsel has repeatedly threatened to challenge Robert Wilson's inability to see 'highly confidential' information....this potentiality renders the Protective Order meaningless as a safeguard.

*Id.* at p. 5.

In *Litton Industries v. Chesapeake and Ohio Ry.,* 129 F.R.D. 528, 531 (E.D.Wis. 1990), the court stated:

> "There is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought."

This language was quoted in *Greater Rockford Energy and Technology Corp. v. Shell Oil Company,* 138 F.R.D. 530 (C.D.Ill.1991) This court also notes that the defendants intend to use the information requested in the subpoenas to defend other actions. (Sarchio Affidavit ¶ 7).

> In deciding whether a request comes within the discovery rules, the court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380 FN. 17 (1978)

The affidavits of Mr. Beam and the materials presented by both the plaintiffs and the defendants convince the undersigned that there is a question as to whether produced documents would be protected. The court is also convinced that if there was a disclosure of the requested information to the defendants that there would be a substantial harm

caused to Insulate. Applying the balancing test of relevance, need, confidentiality and harm, and also considering that the documents requested in the subpoenas are those of a non-party competitor of both the plaintiff and the defendants in the Georgia action, the court concludes that the request in the subpoenas, and particularly Subpoena No. 2, in large part, should be quashed.

An examination of Subpoena No. 2, and particularly requests No. 15, 25, 31, 32, 33 and 34 shows that those requests might perhaps lead to the discovery of admissible evidence which would not be confidential, commercial information. The court will order Insulate to respond to Request 15, 25 and 31. If such documents do not exist, then Insulate shall report that fact to the defendants. It will be ordered that Request 32, 33 and 34 shall be modified by the court to read as follows:

> 32. All documents reflecting or referring or relating to the case of *Wilson Insulation of Augusta, Inc. v MASCO Corp.* 1:03 CV 58 (NDGA)
>
> 33. All documents reflecting or referring or relating to any communications with plaintiff or any of plaintiff's representatives, including attorneys, concerning the case of *Wilson Insulation of Augusta, Inc. v MASCO Corp.* 1:03 CV 58 (NDGA)
>
> 34. All documents provided to you by any person concerning the case of *Wilson Insulation of Augusta, Inc. v MASCO Corp.* 1:03 CV 58 (NDGA).

Insulate shall be ordered to answer and respond to those requests as modified and amended by the court.

The Motion to Quash both Subpoena No. 1 and Subpoena No. 2 as they relate to the remainder of the requests, that being Request 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, and 30 is allowed. It is ordered that Insulate shall not be required to respond to those subpoenas and shall not be required to produce any of those documents requested.

The cost of production of the documents as modified by the court, including the time spent by Mr. Beam and his staff, shall be calculated and a reasonable bill shall be pre-

sented to the defendants for payment and it is ordered that said bill shall be paid. If a dispute arises as to the amount of the cost of production, then either Insulate or the defendants may file further motions. It is specifically ordered that the documents are to be produced to the defendants at the place of business of Insulate.